MORGAN B. MORE ET ALS. *v.* THE WESTERN CONNECTI-CUT TITLE & MORTGAGE COMPANY.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 9—decided December 5, 1941.

*Frank J. DiSesa,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the receiver.

*Warren F. Cressy,* for Anita C. Little et als.

MALTBIE, C. J.  The defendant was engaged in the business, among other things, of loaning money on mortgages and issuing against them participation certificates.  In the course of its business it took a mort-

gage of $450,000 on certain property in Stamford and issued participation certificates against it to an aggregate amount of $438,750. The company became insolvent and the insurance commissioner was appointed receiver under the provisions of §§ 4105 et seq. of the General Statutes. At the time of the appointment, default had been made in the payments due under the mortgage and thereafter the receiver secured a judgment of strict foreclosure and now holds the mortgaged property. He also secured a deficiency judgment for $181,488.18, which, however, he deems to be of little value. He has entered into an agreement for the sale of the property for $352,500 in cash, subject to the approval of the court and his ability to give title. The great majority of those who hold certificates against the mortgage have agreed to the making of the sale but holders of certificates in the amount of $13,850 have neither acquiesced nor objected, and one holding a certificate in the amount of $4,000 objects. The present proceeding, before us on reservation, is an application made by the receiver to the Superior Court for advice as to the rights of the certificate holders and as to the power of the Superior Court to authorize him to sell the premises if such sale appears to be in the best interests of all parties. Three certificate holders intervened and were authorized by the court to appear for the benefit of all certificate holders.

The mortgage and note were both in the usual form, running to the defendant in its corporate capacity alone, and make no reference to the issuance of any participation certificates. Each of these certificates contains the provisions quoted in the footnote.[1] The

---

[1] GUARANTEED FIRST MORTGAGE CERTIFICATE. THE WESTERN CONNECTICUT TITLE AND MORTGAGE COMPANY, hereinafter called the Company, certifies:

policy of mortgage guaranty referred to in the certificates states that the defendant "guarantees to THE

1. That it has received from          hereinafter called the holder, the sum of ......... DOLLARS for the purchase of, and it hereby assigns to the holder, an undivided share equal to that amount, with interest on said share at the rate of ....% per annum, payable on the .... days of .... and ........., in the note and first mortgage made by ............ to the Company, for the principal sum of $............., dated ........., due ......, recorded in the land records of the town of ........., Connecticut in book .... at page ........., and covering premises situated in said town and described in said mortgage.

2. That the Company has, by its policy of mortgage guaranty dated ........, guaranteed to THE STAMFORD TRUST COMPANY, of said Stamford, as trustee for the holders of this and similar certificates which may be issued by the Company in said note and mortgage: (a) the regular payment of interest to each holder upon his undivided share in said note and mortgage at the rate mentioned in his certificate; (b) the payment to each holder of his undivided principal share in said note and mortgage as soon as collected, and in any event within twelve months after said note has become due, with regular payment of interest in the meantime; (c) to conduct without expense to the holders all actions or proceedings that it may deem necessary to enforce the performance of any and all covenants contained in said note and mortgage and to bear the expense of enforcing any and all rights of such holder; (d) to keep the mortgaged premises properly insured against fire; (e) that the title to the mortgaged premises is good and marketable and said mortgage is a first mortgage thereon; (f) that said note and mortgage and said certificates are entitled to exemption from taxation (except inheritance taxes) by the state of Connecticut, or by any local subdivision thereof, under the laws of said state in force at the date of said policy.

3. That said note and mortgage and the fire insurance policies affecting the mortgaged property are held by the Company as agent for the holders of such certificates and for its own account, as their several interests may exist from time to time, and such certificates shall never aggregate more than the amount of principal remaining unpaid on said note and mortgage.

——— THE HOLDER AGREES: ———

1. That the Company shall continue to hold said note, mortgage and fire insurance policies as aforesaid and shall have full and exclusive power to collect and in its own name sue for and receive the principal and interest thereby secured, to distribute the same when

STAMFORD TRUST COMPANY, of said Stamford as TRUSTEE for the holders of mortgage certificates to be issued by the Company in the notes and mortgages described" in an attached document; it recites the terms of the guaranty as stated in the first part of the certificate which has been quoted; it states that the certificates would provide that they were not valid unless authenticated by the trustee and that they would contain the covenants stated in the second part of the certificate which has been quoted; and it contains the further provisions quoted in the footnote.[1]

collected to the persons thereto entitled, to satisfy and discharge the said mortgage in its own name on receiving payment thereof, and to take any action it may deem necessary or desirable in order to protect the interests of the holders, provided that the Company shall not be in default in any of its obligations herein mentioned.

2. Upon a default of the Company in any of its obligations herein mentioned, The Stamford Trust Company, as Trustee for the holders of this and similar certificates, shall be entitled to the possession of said note and mortgage and insurance policies and an assignment of all the Company's interest therein for the benefit of said certificate holders and for the purpose of enforcing their rights therein.

3. The Company may take up and cancel this certificate at any time on thirty days' notice to the holder and the payment at its Stamford office of the amount then owing to the holder for principal and interest.

4. Any interest collected by the Company on said note and mortgage in excess of the rate mentioned in this certificate shall belong to the Company.

5. The interest of the holder is not assignable except on the books of the Company in person or by attorney.

[1] THE COMPANY AGREES, upon a default in any of its obligations herein mentioned, to deliver to the Trustee possession of all said notes, mortgages and fire insurance policies with respect to which such default shall have happened, together with an assignment of all the Company's interest therein for the benefit of said certificate holders; and if such delivery of possession and assignment shall not be made the Trustee shall be entitled to take any proceedings in law or in equity which it may deem necessary to protect the interests of said certificate holders.

THE TRUSTS HEREBY CREATED are accepted by the Trustee upon the following terms:

1. The Trustee shall be under no obligation to take any pro-

The Stamford Trust Company has not demanded possession of the mortgage, nor has any certificate holder requested it in writing to take any action in the matter, nor indemnified it against any costs or expenses it might incur.

The first matter we must consider is as to the rights created in the mortgage by the instruments to which we have referred. In *Matter of People (Tit. & Mtge. Guar. Co.)*, 264 N. Y. 69, 190 N. E. 153, the Court of Appeals had before it for consideration the validity of a statute designed to meet a situation like that before us, and in the course of the opinion (p. 88) it defined the rights arising under instruments somewhat similar to those involved in this case. Despite the purported assignment of an aliquot part of the debt secured and the agreement of the company to act as agent for the certificate holders, it stated that "an analysis of all the terms of the certificate and of the contract, to which it is subject, discloses that the guaranty company has entered into an unconditional promise to pay, ten years from the date of the certificate, the principal sum secured and accrued interest and has transferred to the holder only an interest in the deposited mortgages as collateral security for its debt." The situation before that court differed, however, from that before us, in that the securities against which the certificates were issued were deposited with a trust company and the purported assignment was of an undivided share in the sum secured by them. We are not

ceedings or any action whatever hereunder until it shall be asked in writing so to do by the holders of one or more certificates issued hereunder (who shall at its request deposit their certificates with it) after a default by the Company, and shall be indemnified to its satisfaction against any and all costs, expenses, counsel fees and other reasonable disbursements, and from all possible claims for damages for which it may become liable or responsible on proceeding to carry out such request or demand.

able to agree that a like definition of the rights of certificate holders would apply in the case before us. Giving to the documents an effect which accords with the intent expressed in them, each certificate holder purchased and received an assignment of an undivided interest in the mortgage upon certain terms and conditions, which included a guaranty that the defendant would pay the interest provided in the certificate and the holder's share in the principal and an agreement that the company would hold the mortgage as agent for the certificate holder and for its own account as their several interests might exist from time to time, and would have the exclusive power to collect and distribute the principal and interest. To hold that the effect of the transaction was to make the mortgage merely collateral security would be to regard the guaranty of the company to pay the interest and principal of the mortgage as the primary obligation to which the assignment was incidental, whereas, as we read the agreements, the purchase by the certificate holder of an undivided share in the mortgage and the assignment of such a share to him was the primary object of the agreements, to which were attached, as incidents, the obligations and powers of the company. The certificate holder under these agreements was not buying merely an obligation of the company to pay him certain sums of money secured by collateral, but was purchasing a share in certain definite property owned by the company, subject, however, to the terms and conditions expressed in the agreements.

While the agreements contain no specific authority to the defendant to foreclose the mortgage in case of default, the power conferred upon it to collect, sue for and receive the principal and interest and "to take any action it may deem necessary or desirable in order to protect the interests of the holders" of certificates,

would give it implied authority, in case the debt was not collectible in money, to bring foreclosure proceedings. The certificate holders as partial assignees became vested with a beneficial interest in the mortgage although the legal title remained in the defendant. Whatever would have been the relationship between the parties before the property came into the possession of the corporation, it would, after foreclosure, have held it charged with a trust for the certificate holders so far as their interests were concerned. *Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179, 183, 128 N. E. 113; *Palmer* v. *Palmer*, 112 Me. 149, 152, 91 Atl. 284; *Hubbard* v. *Bibb Brokerage Co.*, 44 Ga. App. 1, 10, 160 S. E. 639.

Obviously a partition of the property among the many certificate holders would not be possible, even if it would be permissible under the agreement without their consent, and their rights could only be secured by the sale of the property and the distribution of the proceeds. A power to sell the property after the defendant had obtained it by foreclosure would, therefore, under proper limitations be implied. *Green* v. *Bissell*, 79 Conn. 547, 553, 65 Atl. 1056; 3 Bogert, Trusts & Trustees, p. 2183. The New Jersey Court of Errors and Appeals, confronted with a similar situation in *Fidelity Union Trust Co.* v. *Mintz*, 125 N. J. Eq. 52, 55, 4 Atl. (2d) 44, said: "The foreclosure proceedings, purchase of the property at the sale, and the re-sale of same were steps necessary to be taken by the trustee to carry out the duty of collecting the principal, as it had engaged to do under the terms of the trust. Where a trust does not expressly give the power of sale, it will be implied from the fact that the trustee is charged with a duty which cannot be performed without the power of sale, and

in the present case, the trustee would be unable to carry out the terms of the trust without such right."

In *Hoffman* v. *First Bond & Mortgage Co., Inc.*, 116 Conn. 320, 164 Atl. 656, it appeared that the defendant as trustee had taken a mortgage on certain premises securing an indebtedness represented by a large number of notes, many of which it had sold. It had express authority to foreclose the mortgage. It secured a decree for a foreclosure by sale and itself bid in the property, although it had no express authority to do so. Certain noteholders brought an action to compel partition of the real estate or its sale. The trial court rendered judgment for the defendants and we sustained its decision. We held that, if necessary for the protection of the noteholders, the defendant had implied power to bid in the property at a sale, and we said (p. 326), quoting from 3 Pomeroy, Equity Jurisprudence (4th Ed.), p. 2428: "Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner." We further said: "It is one of the most important and essential powers of a court of equity to raise the implications growing out of the state of trust property, the purposes to be accomplished and the mode adapted to that end, without violence to or forced construction of the trust instrument." In the situation then before us the mortgage and notes ran to the defendant as trustee, whereas in the present case the defendant was not an express trustee and had itself an interest in the mortgage

and the property after foreclosure, and this rather strengthens the implication of a power in the corporation to sell the property after foreclosure, because ordinarily an assignor of a partial interest is the proper party to realize upon the obligation and to apportion the amount recovered between himself and the assignee. *Hubbard* v. *Bibb Brokerage Co.*, supra; *Hubbard* v. *Prather and Smiley*, 1 Bibb (4 Ky.) 178, 181. Even in the absence of express authority, there is in the situation before us a clear implication of a power in the defendant to acquire title by strict foreclosure and, having so acquired it, to sell the property in order to distribute the proceeds if that be for the best interests of the certificate holders, a power which can be exercised even without the consent of all the certificate holders. This would not be contrary to any provisions in the agreement, but would be in the exercise of an implied power to supplement them and make them effective. Even if there were doubt of this, as pointed out in the *Hoffman* case, equity might authorize such action to be taken if necessary for the reasonable protection of the certificate holders, in a situation where the legal title to the property was in the defendant but it was held in a trust capacity so far as their interests were concerned.

Under the terms of the policy of mortgage guaranty the company was bound, if it made default in any of its obligations, to deliver to the trust company possession of all notes and mortgages with respect to which the default had occurred, with an assignment of all the company's interest therein; and no demand by the trust company was necessary. The policy recites, however, that the trust company accepted the trust upon certain terms, one of which was that it was not required to take any proceedings or any action what-

ever until requested to do so in writing by one or more of the certificate holders, and until it was indemnified to its satisfaction against costs, expenses and claims for damages. As there was no request to it in writing by any certificate holder and no provision of indemnity was made, it was not obliged to act and in fact has not done so. Had the receivership not intervened, the defendant would have held the property with the powers and obligations we have stated. The receiver holds it subject to the same rights which the certificate holders would have had, if the receivership had not intervened. *Brackett* v. *Middlesex Banking Co.*, 89 Conn. 645, 654, 95 Atl. 12; *O'Brien* v. *Doolittle*, 91 Conn. 354, 357, 99 Atl. 1055. He holds it as an arm of the court which may direct him in his disposition of it in such a way as to work out the rights of the parties. *American Bank & Trust Co.* v. *Feeney Tool Co., Inc.*, 106 Conn. 159, 165, 137 Atl. 756; *Desiderio* v. *Iadonisi*, 115 Conn. 652, 655, 163 Atl. 254. If the court concludes that it is for the best interests of the parties that the property shall be sold by the receiver, it may authorize him to do so. The receiver, in making such a sale, would be doing only that which the defendant might have done except for the receivership proceedings. Such a sale would not illegally deprive a certificate holder of any property right; the possibility that it might become necessary as the only effective means to realize the indebtedness secured by the mortgage and distribute the amount received among the certificate holders was implicit in the agreements under which the certificate holders purchased their assignments. 105 A. L. R. 197, note. If in the case of *Hoffman* v. *First Bond & Mortgage Co., Inc.*, supra, the court could properly refuse to order a sale or partition of the property held by the trustee against the demand of a single noteholder that it do so, it

can in this case authorize the sale of the property by the receiver against the objection of one or more certificate holders.

The defendant did not issue participating certificates to the full amount of the mortgage, but retained an interest amounting to $11,250. The agreements contemplated that it might do this. We are asked as to the rights of the parties in the proceeds of the sale of the property should the amount realized be less than the face of the mortgage, the particular question as appears from the briefs being whether the receiver is entitled to a pro rata share in those proceeds upon the basis of the interest in the mortgage retained by the company. If any certificate holder or holders had, in writing, requested the trust company to act when a default by the defendant occurred and had indemnified it, the defendant would, under the policy, have been bound not only to deliver to the company the mortgage and note but also to assign to it all its interest in them for the benefit of the certificate holders. Had that been done, the certificate holders might have had a right to have the entire proceeds of the amount realized from the mortgage distributed among them. But none of them took the necessary steps to bring this about. The defendant continued to hold the mortgage, with the power to collect it and distribute the proceeds. Under such circumstances, the certificate holders would have no lien upon the portion of the amount recovered which represented the share in the mortgage retained by the defendant; nor under the agreements would its rights be in any way subordinate to theirs. In *Lyman* v. *Stevens*, 123 Conn. 591, 197 Atl. 313, one of the questions presented was whether a receiver of a corporation which had taken a mortgage as trustee to secure an issue of bonds, many of which it had sold, could share in the proceeds re-

sulting from a reorganization upon the basis of interest coupons from the bonds sold which it had paid when the mortgagor had defaulted and which had been assigned to it; and we held that he could, even though the corporation had committed a technical breach of trust in not notifying the bondholders of the mortgagor's default. We said (p. 600): "It must also be remembered that the question as it is now presented is not one of rights as between the bondholders and the Colonial Bond and Mortgage Company, but one between the bondholders and the creditors of that company who are represented by the receiver; and even if under the circumstances the rights of the company might be subordinated to those of the bondholders, a very different situation is presented as regards the rights of its creditors who were apparently innocent of any participation in its breach of trust." In a similar situation in *Matter of Lawyers Mortgage Co.,* 151 Misc. 744, 272 N. Y. S. 390, the Supreme Court held that the superintendent of insurance in rehabilitation proceedings involving certificates retained by the company which he represented was entitled to share equally with the holders of certificates it had issued to others, and this decision was approved by the Appellate Division, 242 App. Div. 617, 271 N. Y. S. 1074. The later decision of the Supreme Court in the same matter, decided by the same judge, reaffirms this principle, and the portion of the opinion to which the certificate holders refer involved other facts not here present. *Matter of Lawyers Title & Guaranty Co.,* 157 Misc. 516, 284 N. Y. S. 208. We see no reason why the interest which the defendant retained in the mortgage now held by the receiver should not share equally with the interests assigned to the certificate holders in any distribution of the proceeds of the sale of the property.

We are asked what notice should be given to certificate holders of an application by the receiver to the court for permission to sell the property. The certificate holders are not merely creditors of the estate but have an interest in the property. On an application by the receiver to sell the property they should, therefore, be made parties; but if the number is very numerous so that it would be impracticable or unreasonably expensive to make them all parties, one or more may become parties for the benefit of all or be authorized by the court to act for all, as was done as regards the present proceeding. General Statutes § 5519. Such authority is not, however, effective as regards certificate holders who believe that their interests are opposed to those of the parties so authorized. *Barnes* v. *Church,* 118 Conn. 521, 526, 173 Atl. 226. If some become parties for all or are authorized to represent all, the trial court should order proper notice to be given to all certificate holders in order that any claiming an adverse interest may have an opportunity to appear and be heard.

The questions propounded to us are stated in the footnote.[1] To the first we answer that the property

---

[1] 1. What is the interest of the participating certificate holders in premises acquired by the receiver under foreclosure proceedings?

2. What are the duties and obligations of the receiver toward the participating certificate holders under such a foreclosure with respect to the retention of title by him and the management and conduct of the property?

3. Has the Superior Court authority, without the consent of the participating certificate holders and for the purpose of the ultimate liquidation of the assets of said corporation, to order and direct the receiver to sell said premises or other premises which may be acquired by him in the same manner, if in its judgment such sale appears to be for the best interest of all the parties?

1A. In the event of the sale of mortgaged premises for less than the amount of the face of the mortgage and in which the company holds participating certificates, what are the rights of the parties as

in the hands of the receiver stands charged with a trust for the benefit of the certificate holders so far as they have interests in it by reason of the assignment to them of partial interests in the mortgage. To the second we answer that the receiver holds the property subject to the rights of the certificate holders with the same powers and subject to the same obligations as the defendant would have held it, had the receivership not intervened. To the third question we answer that the receiver may be authorized to sell the property even without the consent of the certificate holders should the court deem it to be for the best interests of all concerned. To question 1A we answer that proceeds of a sale should be distributed pro rata among the certificate holders, except that the receiver may keep a proportionate share representing the interest in the mortgage retained by the defendant. To the fourth question we answer that all certificate holders should be made parties to a proceeding by the receiver to secure permission to sell the property; in a proper case some may become parties in behalf of all or be authorized to represent all; but in the event that is done, the court should order such notice as it deems proper to give all certificate holders an opportunity to appear and be heard.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

---

between said certificate holders and the receiver in relation to distribution of the proceeds of such sale?

4. In the event the Superior Court has authority to order a sale of this or similar premises, what notice ought the receiver to give to the participating certificate holders?