501 F.2d 662
 SECURITIES INVESTMENT COMPANY OF ST. LOUIS, Plaintiff-Appellee,
v.
INDIAN WATERS DEVELOPMENT CORPORATION, Edith A. Whitcraft
and Thomas M. Harris, as Administrator C.T.A. of
the Estate of S. Maurice Whitcraft,
Deceased, Defendants-Appellants.
 No. 73-2919.
 United States Court of Appeals, Fifth Circuit.
 Sept. 27, 1974, Rehearing Denied Oct. 22, 1974.
 
 Michael B. Piper, St. Petersburg, Fla., Carleton L. Weidemeyer, Clearwater, Fla., Thomas M. Harris, St. Petersburg, Fla., for defendants-appellants.
 Marcus A. Wilkinson, III, Tampa, Fla., John S. White, Jr., Baton Rouge, La., for plaintiff-appellee.
 Before BROWN, Chief judge, and RIVES and DYER, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 In this diversity action Lender, Securities Investment Company of St. Louis (Securities), sued Borrowers, Indian Waters Development Corporation (Indian Waters), on a note guaranteed by co-defendants[1] Maurice and Edith Whitcraft. The lower court entered judgment for Lender on a jury verdict directed by the Court on certain issues. We hold the District Court was correct and affirm in all respects.
 
 Demand Accounting When Interest's Mounting
 
 2
 Borrowers first contend Lenders' failure to respond to Borrowers' letter-demands for an accounting of payments (as reducing interest and as reducing principal) on the note resulted in a forfeiture of all rights to interest under F.S.A. 687.08.[2] Borrowers' demands were all made after this lawsuit was filed. No payment or tender of payment accompanied any of these demands.
 
 
 3
 The statute plainly shows its purpose is to provide a debtor with a receipt for payment(s) made. The section is not meant to entitle a debtor to an account-status report whenever debtor feels inclined to demand one. Part of the Florida scheme for protecting debtors against illegal interest rates is to require creditors to supply paying debtors with receipts showing reduction of interest and principal. This helps the debtor to be informed of the amount of interest he is paying and just what debt, principal, interest, or both, remains unpaid. It is not part of the Florida scheme to permit debtors to avoid paying otherwise legitimate interest by making purposeless demands for accounting unaccompanied by payment once suit is brought to collect a delinquent debt.
 
 
 4
 Is The Veil To Any Avail?
 
 
 5
 Interest on the note was 6% 'add-on'. Both parties agree that for Florida usury statute, F.S.A. 687.03,[3] purposes, that converts to a simple rate of 10.85%. The Florida statute permits a creditor to charge up to 15% Interest on corporate loans. However, if as now claimed by Borrowers this is a loan to the guarantors, the interest charged is above the legal maximum (10%) on loans to individuals.
 
 
 6
 Borrowers claim the loan to the corporate debtor Indian Waters is a sham-- a 'front' for a personal loan to the guarantors. Borrowers claim the money was borrowed for the purpose of improving real property owned by the guarantors individually. Because the interest rate Lender wanted to charge was higher than 10%, it refused to loan directly to the individuals. Therefore, the loan was made to the corporation even though the borrowed money was for the ultimate use and benefit of the individual shareholder-guarantors.
 
 
 7
 Florida does not permit its usury statutes to be evaded by using a corporation to disguise a loan to an individual. Gilbert v. Doris R. Corp., Fla.App., 1959, 111 So.2d 682. Correctly stating the rule, however, does not mean the District Court erred, for the corporate-v.-individual loan question is one of fact to be determined in each case. Id. Indeed, a corporation formed for the sole purpose of borrowing money at an interest rate higher than 10% Is not, without more, grounds in Florida for holding the loan usurious. Holland v. Gross, Fla., 1956, 89 So.2d 255. Whatever doubts there might have been about what the 'something more' apparently found in Gilbert v. Doris R. Corp., supra, to exist was cleared up in 1969 when the Florida Supreme Court did discuss the elements to be considered in deciding when a corporate loan is a sham. Tel Service Co. v. General Capital Corp., Fla., 1969, 227 So.2d 667.[4]
 
 
 8
 On the trial evidence, a fact-finder might well have been justified in finding this either a bona fide corporate loan or a sham corporate loan. Thus, the question was properly put to the jury under instruction[5] which we find to have been correct.[6] Borrowers' demand for an instructed verdict on this issue was properly denied.
 
 Optional Usury
 
 9
 The only other substantial issue raised by Borrowers is the manner in which interest should be calculated, the hope being of course to get it above the permissible 15%. Borrowers first maintain the interest should be calculated by including certain payments made outside the normal payment schedule pursuant to a provision in the agreement which permitted parcels of land to be released from the real estate expressly included in the mortgage given as security for the individual guaranties. These payments[7] were to be applied solely to reduce principal. Tehrefore, they effectively served to increase the interest rate on the loan as a whole. If these payments, as were actually made, are included in the interest calculation, the effective rate exceeds 15%, the maximum interest rate permitted on corporate loans under F.S.A. 687.03.[8]
 
 
 10
 The Borrowers' second claim, which we dispose of quickly, is that Lender in the allocation of funds disbursed in effect required payments to creditors of the indivdual guarantors. If a creditor requires a debtor to repay a loan for which debtor is not obligated (i.e. someone else's debt), Florida holds such payments are to be included in the amount of interest charged for usury calculation purposes. Curtiss National Bank of Miami Springs v. Solomon, Fla.App. 1971, 243 So.2d 475. That is because such amounts must be repaid to the creditor, without being 'used' by the debtor. Contrariwise, a corporate borrower would 'use' money the lender required it to spend on repaying loans the borrower was legally obligated to pay, because the repayment would correspondingly reduce the corporation's liabilities. In this case the District Court, after examining all of the evidence, had ample basis for concluding that this did not constitute exacting payment of a debt of another.
 
 
 11
 Little need be said as to the first contention that mortgage prepayment privileges served to increase interest charges. Of most importance 687.03 prescribes the standard of determining usury on the basis of the instruments.[9] Additionally, the promissory note[10] found by the jury to be the bona fide obligation of the corporate debtor, not the individual guarantors, expressly provided for adjustment of the ultimate interest charges in the event of prepayment, which in a sense, is the function of the mortgage release payments.[11]
 
 
 12
 The debt represented by the note did not require any mortgage release. On the face of the loan agreement the simple interest rate was 10.85%. The mortgage release clause in the mortgage given solely by guarantors ran solely in their favor to release security given by them in guaranty of the debt. This affected the security which guarantors had committed but it had no effect on the debt due by the corporate debtor, the calculation of principal, interest, or both (as originally enforceable), payment of which had been guaranteed.
 
 
 13
 Nothing in Home Credit Co. v. Brown, Fla.1962, 148 So.2d 257, dealing with the treatment of usury under accelerated maturities compels any different result. After all, it was never in the power of the lending agency to trigger these payments for Lender never had, does not now, and never will have a right under this agreement to force release payments.[12]
 
 Tag Ends
 
 14
 The District Court did not permit Borrower to examine, as an adverse witness, a former employee of Lender who negotiated the loan. Without detracting from Degelos v. Fidelity and Casualty Co. of N.Y., 5 Cir., 1963, 313 F.2d 809, or Fall v. Esso Standard Oil Co., 5 Cir., 1961, 297 F.2d 411, we decline to analyze or balance in any detail the trial judge's discretion in this matter against the liberal-construction policies of the Federal Rules because Borrowers have wholly failed to show how they were prejudiced by the District Court's ruling. Nowhere do Borrowers attempt to show what could have been accomplished or shown had they been permitted to examine this witness as an adverse one.
 
 
 15
 Finally, we have considered Borrowers' assertions the District Court erred in its award of attorney fees to Securities and in its form of judgment. These claims are without merit.
 
 
 16
 Affirmed.
 
 
 
 [1]
 George and Irene Dyer were also named as co-defendants in Securities' original complaint. The Dyers were co-guarantors of the corporate loan and, with the Whitcrafts, own 100% Of the Indian Waters stock. Securities amended the complaint to drop the action against the Dyers in order to attain complete diversity between the parties
 
 
 [2]
 F.S.A. 687.08 Persons lending money to give borrower receipt for payments; contents of receipt; penalty for violation
 Every person, or the agent, officer, or other representative of any person, lending money in this state upon security shall, whenever the borrower of such money makes payment of any money, either principal or interest, immediately upon such payment being made, give to said borrower, a receipt, dated of the date of such payment, which receipt shall state the amount paid and for what such payments /1/ is made. If such payment is for interest on the sum borrowed, the receipt shall so state. If the sum so paid is to be applied to the payment of the principal sum borrowed, the receipt shall so state. All such receipts shall be duly and properly signed by the person, or the agent, officer or other representative of the person, to whom such money is paid. Whoever refuses, upon demand, to give a receipt complying with the requirements of this section shall forfeit the entire interest upon said principal sum to the borrower. 1. So in Florida Statutes 1941. Probably should read 'payment.'
 
 
 [3]
 687.03 Unlawful rates of interest defined; proviso
 It shall be usury and unlawful for any person, or for any agent, officer or other representative of any person, to reserve, charge or take for any loan, or for any advance of money, or for forbearance to enforce the collection of any sum of money, except upon an obligation of a corporation, a rate of interest greater than ten per cent per annum, either directly or indirectly, by way of commission for advances, discounts, exchange, or by any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of ten per cent; and such transactions with a corporation shall, whereby the corporation pays interest, be usury and unlawful if for a rate of interest greater than fifteen per cent per annum; however, if any loan, advance of money, forbearance to enforce the collection of any debt, or contract exceeds five hundred thousand dollars in amount or value, it shall not be usury or unlawful to reserve, charge, or take interest thereon unless the rate of interest exceeds fifteen per cent per annum. The provisions of this section shall not apply to sales of bonds in excess of one hundred dollars and mortgages securing the same or money loaned on bonds. For the purpose of this section and 687.02, the rate of interest on any loan of money shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms, and in the event said loan is paid or collected by court action prior to the term of said loan, any payments charged, reserved, or taken as an advance or forbearance which are in the nature of, and taken into account in the calculation of, interest shall be spread over the stated term of the loan for the purpose of determining the rate of interest.
 Amended by Laws 1970, c. 70-331, 1, eff. July 1, 1970; Laws 1973, c. 73-298, 2, eff. Oct. 1, 1973.
 
 
 [4]
 'Borrower corporation, which was organized because of lender's legitimate policy of dealing only with corporations, and which had bank account, adopted corporate resolutions in connection with other borrowers, paid real estate taxes, entered into leases with tenants, and acted as valid legal entity, was neither shell nor cloak and was barred by statute from asserting defense of usury in lender's mortgage foreclosure action where chief stockholder had capable legal advice before forming corporation and was a knowledgeable businessman, notwithstanding that lender's only reason for dealing with corporations applicable was to be able to charge amount in excess of six percent per annum fixed by statute. * * *'
 
 
 [227]
 So.2d at 670, quoting and adopting Monmouth Capital Corp. v. Holmdel Village Shops, Inc., 1966, 92 N.J.Super. 480, 481, 224 A.2d 35, 36
 
 
 [5]
 I further instruct you that in making your determination as to whether this loan was made to Indian Waters Development corporation as a device or scheme to avoid the usury law, you may consider among other things (the) following with respect to the corporation at the time the loan was made in 1965:
 First, whether there had been active stockholders meetings.
 Second, whether there had been active directors meetings.
 Third, whether the corporation had ever engaged in any form of business prior to the time the loan was made by Securities Investment Company of St. Louis.
 Fourth, whether the corporation engaged in any form of business after the loan was made.
 Fifth, whether the corporation had any employees.
 Sixth, whether the corporation had an active checking account.
 Seventh, whether the proceeds of the loan were used for the corporation's business or that of the individual defendants.
 Eighth, whether the corporation paid any real estate taxes.
 And, ninth, whether the corporation filed any income tax returns.
 
 
 [6]
 In fact, the Judge's instruction conformed almost verbatim to Borrowers' requested instruction No. 10
 
 
 [7]
 $800.00 per landlocked acre and $1,600.00 for each waterfront acre. Approximately $15,000.00 in such payments were actually made
 
 
 [8]
 See note 3, supra
 
 
 [9]
 'For the purpose of this section and 687.02, the rate of interest on any loan of money shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms * * *.' F.S.A. 687.03
 
 
 [10]
 The note provided:
 (1) This note may at the option of the (Borrower) be paid in full prior to its maturity and a refund credit of precomputed interest shall be made. Such refund credit shall represent that proportion of the total precomputed interest which the sum of the monthly balances scheduled to follow the installment date nearest the date of prepayment in full bears to the sum of all scheduled monthly balances, as computed in accordance with the rule commonly known as the rule of seventy-eight.
 (2) Notwithstanding any provisions hereof to the contrary, no interest, consideration or charges in excess of those permitted by law shall accrue or become payable hereunder.
 
 
 [11]
 We think the two provisions set out in note 10, supra, operating together, serve to prevent Lender from collecting an illegal amount of interest. While we do not hold provision (2) would operate to forgive a rate of interest which is usurious when calculated by the otherwise enforceable provisions of the note, that provision, when read with provision (1), does indicate a legitimate intent on the part of Lender-- one which may be given effect-- to adjust the final interest collected to reflect voluntary payments against principal made before due from the corporate debtor
 
 
 [12]
 We are dealing here with a corporate debtor and guarantors to whom, as such, prepayment-release privileges were extended. Where it is recognized that the debtor-entity may secure release of property, it might be the result would be different