**DEPOSITORS TRUST COMPANY OF AUGUSTA, Plaintiff, Appellee,**

v.

**FRATI ENTERPRISES, INC., Defendant, Appellee,**

**James A. Goodman, etc., Defendant, Appellant.**

**No. 78–1341.**

United States Court of Appeals, First Circuit.

Argued Dec. 5, 1978.

Decided Jan. 11, 1979.

Errol K. Paine, Bangor, Maine, with whom Paine & Lynch, Bangor, Maine, was on brief, for defendant, appellant.

Frank G. Chapman, Augusta, Maine, with whom Locke, Campbell & Chapman, Augusta, Maine, was on brief, for defendant, appellee, Depositors Trust Co. of Augusta.

Robert E. Sutcliffe, Bangor, Maine, with whom Rudman, Winchell, Carter & Buckley, Bangor, Maine, was on brief, for plaintiff, appellee, Depositors Trust Co. of Bangor.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

■ This is an appeal by a trustee in bankruptcy from a decision granting summary judgment in favor of two banks that allegedly received preferences. 11 U.S.C. § 96. The district court held that the amount received by the banks was a permissible set-off of mutual debts. 11 U.S.C. § 108. We affirm.

The case involves a complex series of transactions which can be fairly understood as follows. Appellees are sister banking corporations, Depositors Trust Company of Augusta (Augusta) and Depositors Trust Company of Bangor (Bangor). Although owned by the same bank holding company, they are separate corporate entities. The bankrupt, Frati Enterprises, was in the retail house trailer business. Augusta provided Frati with inventory financing, secured by a floating lien on inventory and proceeds. Frati discounted all retail financing contracts to Augusta. Augusta paid Frati the profit on the sale, but kept in a dealer reserve account a portion of the unearned interest on the finance contracts. The dealer reserve amounted to 5 per cent of the unpaid balance on the finance contracts. As the contracts were paid off, periodic payments from the reserve were made to Frati. Defaulted contracts were charged against the reserve.

In October, 1973, Frati borrowed $25,000 from Bangor, giving in return an unsecured 60 day note. The loan was not repaid. In May, 1974, officers of both Bangor and Au-

gusta became concerned about Frati's deteriorating financial condition. Desiring to keep management of Frati's accounts under one roof, Augusta bought the unsecured note from Bangor on May 22. On June 11, Bangor bought a 100 per cent participation in the proceeds of the note from Augusta. Because the participation-back was envisioned from the start, it is accurate to characterize the transaction as Bangor selling the note to Augusta in return for a promise that the proceeds of the note would be paid to Bangor.

On July 22, Augusta collected the note by charging Frati's dealer reserve account. Augusta then paid Bangor pursuant to the participation agreement. Frati was adjudicated a bankrupt on October 2. The dealer reserve account ultimately proved inadequate to cover Frati's obligations to Augusta. Pursuant to an informal understanding, Bangor returned the $25,000 to Augusta, reducing but not eliminating the losses sustained on the Frati loans.

Appellant attacks the assignment transaction and subsequent charge against the dealer reserve as a sham not falling within the protection of § 68 of the Bankruptcy Act, 11 U.S.C. § 108. Specifically, appellant argues that the note remained an obligation to Bangor; Augusta merely acted as a collection agent or trustee. Thus, argues appellant, the note was not properly set off against Augusta's obligation to pay Frati sums held in the dealer reserve because the debts were not mutual within the meaning of the Act.[1] See Collier on Bankruptcy ¶ 68.04 (14th edition). Appellant goes on to argue that the transfer from the dealer reserve account, occurring within four months prior to bankruptcy, is avoidable as either a preference or a fraudulent transfer, 11 U.S.C. §§ 96 & 107, even though the assignment itself took place outside the suspect period.

■ As an initial matter, we note that one common sense answer to this problem is not available. Bangor and Augusta are basically branches of the same bank. Be-

cause of the oddities of state branching laws, however, they must operate as separate corporate entities. It is well established that one subsidiary may not set off a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary. In re Vehm Engineering Corp., 521 F.2d 186 (9th Cir. 1975); In re Berger Steel, 327 F.2d 401 (7th Cir. 1964). Thus, although Bangor and Augusta are basically the same bank, we cannot treat them as such, in the absence of an agreement by the bankrupt to treat the two banks as one. See In re Berger Steel, supra, at 405–06.

Viewing the transaction in dispute as one involving truly separate corporations, we find some merit in appellant's arguments. The technical argument that the holder of a 100 per cent participated note (Augusta) stands as a trustee for the beneficial owners (Bangor), which status defeats the mutuality of the debts, does not, by itself, impress us. The cases appellant cites for this technical proposition did not arise in a bankruptcy context. See, e. g., More v. Western Conn. Title & Mortgage Co., 128 Conn. 360, 23 A.2d 128 (1941); Board of County Comm'rs v. Cook, 141 Kan. 677, 42 P.2d 568 (1935). As we understand the transaction involved here, Augusta had the legal power to collect the note and to compromise or adjust its terms. Augusta may be fairly characterized as Frati's creditor on the note, not Bangor. In re Yale Express, 245 F.Supp. 790 (S.D.N.Y.1965); see In re Erie Forge & Steel Co., 456 F.2d 801 (3d Cir. 1972) (not a preference to comply with contractual obligation to share proceeds of note collection effected through set-off); cf. Board of County Comm'rs, supra (holder of mortgage is proper party to foreclose for benefit of participation mortgage bond holders).

We find more merit in appellant's argument that this was a sham transaction that abused the special right of banks as depository institutions to receive payments on antecedent debts, by way of set-off, within four months prior to bankruptcy. See

---

1. The district court assumed without deciding that the dealer reserve was the property of Frati. In view of our decision, infra, we need not reexamine this assumption.

*Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). This special right is granted an institution, often the chief creditor, bearing the greatest risk of insolvency, in order to promote business work outs [2] and avoid over hasty institution of bankruptcy proceedings. *Studley v. Boylston Nat'l Bank, supra;* 4 Collier on Bankruptcy, *supra,* ¶ 68.01, at 848. In the case at bar, Augusta bore no economic risk on the note and thus arguably should not be entitled to extend the set-off privilege to the note. Put in more fundamental terms, if we approve the no-risk assignment involved here, we may encourage banks holding deposits indirectly to prefer creditors by accepting notes, which cost the bank nothing, with a view toward use as a set-off.

Although the possibility of abuse hypothesized above may be serious, we think that Congress has already dealt with the problem in § 68(b)(2), 11 U.S.C. § 108(b)(2). That section bans set-offs against debts assigned to a bank within four months of bankruptcy. Creditors will most often seek the umbrella of a bank's deposits when insolvency seems likely. Congress has decided to prohibit seeking such shelter within four months of terminal insolvency. Outside that period, insolvency is not usually imminent, and few creditors are likely to forego their right to collect in order to obtain the protection of a potential set-off. Thus, the abuse threatened here is the very abuse Congress has dealt with through § 68(b)(2). Moreover, Congress has recently reevaluated a bank's right of set-off and has retained that right in the new Act. Bankruptcy Reform Act of 1978, P.L. No. 95–598, § 553.[3]

Finally, we think that the 100 per cent participated note involved here provides no more inducement to the bank holding a debtor's deposits to sweep creditors under the umbrella of those deposits than does an assignment whose collection is guaranteed by the assignor. Our research reveals no case refusing to validate the use of a note as a set-off simply because payment on the note was guaranteed. Admittedly, such an assignment would normally require that the assignee part with its own funds, even though those funds are not truly at risk. In the case at bar, however, the sister banks involved did no more than move funds between compensating balances in the same branch when the assignment and participation-back took place. An assignment with guaranteed collection would involve the same paper transfers. Thus, at least when sister branch banking corporations are involved, we see no difference between a 100 per cent participated note and an assignment of a note whose collection is fully guaranteed. Moreover, the record reveals that a guaranteed-collection assignment was the substance, if not the form of this transaction; Bangor returned the proceeds of the note to Augusta when the dealer reserve proved inadequate to cover Augusta's losses on the Frati account.

■ Thus, we see no policy reason not to give the note assignment its usual legal effect for purposes of § 68.[4] Appellant urges us to see through form to substance, and we do so: the substance bothers us not nearly so much as the form. Accordingly, the decision of the district court is

*Affirmed.*

---

**2.** That is, the ability to look to deposits for security, a standard banking practice, promotes reasonable forbearance in hopes of collecting from the revenues of further operations.

**3.** Indeed, the new Act reduces the period during which assignments are impermissible for purposes of set-off to 90 days. P.L. No. 95–598, § 553(a)(2)(B). This reduction is counterbalanced by the elimination of the requirement that the trustee prove that the assignment was made "with a view to" use as a set-off, as presently required under § 68(b)(2). We read this new period of absolute impermissibility as a further Congressional judgment that the possibility of abuse need only concern us within the limited period.

**4.** We reject as untenable appellant's fraudulent transfer argument under § 67 of the Act. Thus, we need not decide whether a set-off permissible under § 68 can ever be a fraudulent transfer under § 67.