GRIMES, Judge.
This is an appeal from a usury judgment directing the recovery of double interest pursuant to section 687.04, Florida Statutes (1973).
The following facts are pertinent to the disposition of the case. In 1974 Thomas Smith practiced law with an associate, Robert R. Carbonell. Prior to 1974, Smith had worked for a law firm that was general counsel for a bank, and 80% of his practice involved banking law. Smith, Carbonell, and a third lawyer named Tamargo formed a limited partnership of Spigrin Properties, Ltd., and bécame its general partners. Spigrin Properties, Ltd., then purchased a building in Tampa for use as law offices for the three principals of the partnership. In order to purchase the property and do renovation, Smith borrowed $150,000 from Exchange National Bank on a six month note. The partnership then purchased the property for $100,000 and spent another $100,000 remodelling.
As the Exchange Bank note was coming due, Smith approached Paul Keim, president of Sun Bank, to obtain financing in order to pay off the note. Keim replied that Sun Bank would consider a loan to a corporation to be secured by a mortgage on the building. After further discussion, Sun Bank committed to loan Smith’s corporation $175,000 to take out the six month Exchange note. The interest rate was to be 3.5 points above prime with a minimum rate of 11% and a maximum of 15%. The *242 loan was to be secured by a first mortgage on the partnership building and was to be guaranteed by Smith, Tamargo, their wives and Carbonell. However, since the bank was only willing to advance $100,000, it required Smith to purchase a $75,000 participation in the loan. It was contemplated that the bank would loan Smith the $75,000 with a six month demand note to enable him to purchase his participation. He would repay the note out of the anticipated proceeds of a vested inheritance, with his loan to be secured by an assignment of an interest in the inheritance.
.Smith and Carbonell arranged for the incorporation of Spigrin, Inc., and on November 5, 1974, the loan from Sun Bank to that corporation closed pursuant to the terms of the commitment. The sum of $159,125 was paid to Exchange Bank to satisfy Smith’s note. Spigrin, Inc., received the balance of $14,619.50, after deduction of various loan closing expenses, and used the money to repay debts incurred on behalf of the property. Spigrin, Inc., and Spigrin Properties, Ltd., executed a balloon mortgage in favor of Sun Bank on the property, although the title remained in Spigrin Properties, Ltd. Smith and Sun Bank executed a participation agreement stating, “THOMAS A. SMITH ... has a participation to the extent of $75,000.00 in the loan of $175,000.00 made to SPIGRIN, INC., a Florida corpora-tion_” Smith’s pro rata share of interest was to be credited to his Sun Bank savings account and the bank charged him a 1% service fee. Prior to the closing of the loan to Spigrin, Inc., Smith received his vested interest in the estate, so he did not need to borrow the $75,000 in order to put up his share of the participation.
Spigrin, Inc., undertook no activities upon formation except executing the note and acquiring a seal and pretyped corporate record book. It never engaged in any activity relating to the property or the loan such as collecting rent, paying taxes, repaying the loan, or supervising the premises. However, the following year Spigrin, Inc., purchased and operated eleven bars. Spigrin Properties, Ltd., paid off the loan on December 17, 1975, together with interest totalling $22,757.32. Of this sum, $12,-758.47 went to Sun Bank and $9,998.85 went to Smith.
Thereafter, Spigrin, Inc., Spigrin Properties, Ltd., and the general partners sued Sun Bank on the theory that Sun Bank had forced the individual plaintiffs to incorporate as Spigrin, Inc., as a device or artifice to evade the Florida usury laws. They sought double the interest “exacted, taken and received” by Sun Bank pursuant to section 687.04, Florida Statutes (1973). Sun Bank counterclaimed against Smith on the ground that Smith had participated in the loan to Spigrin, Inc., and had received a pro fata share of the interest. Thus, Sun Bank sought a pro rata share of damages from Smith if the plaintiffs were awarded damages against it.
At the trial, Smith testified that during his negotiations with Keim, they discussed the use of a “shell” corporation in order that the bank could evade the 10% interest limitation on loans to individuals. Smith told Keim that he thought the loan to the corporation was usurious, but Keim took the position that this was not his problem because “[a]s long as my lawyers approve it, then I’ve got myself covered.” According to Smith, Keim indicated that he did not care whether the building was transferred to the corporation. Keim denied discussing the use of a “shell” corporation and stated that there was no talk of usury prior to the closing of the loan.
Following a nonjury trial the trial court found that Sun Bank had made the loan to Spigrin, Inc., as a shell corporation established for the purpose of receiving the loan to circumvent the usury statutes. The court reasoned. that while the loan was ostensibly to Spigrin, Inc., it was actually made to the individual partners of Spigrin Properties, Ltd., and to the partnership itself. On the bank’s counterclaim, the court concluded that Smith’s participation was in fact a loan from him to the bank, and therefore held he did not have to contribute his share of the damages awarded against *243 the bank. The court entered a $35,515.79 judgment for Spigrin Properties, Ltd., against the bank, representing double the amount of interest received less the interest paid to Smith. Sun Bank appeals the court’s findings that the loan was usurious and that Smith had loaned the bank $75,-000. In a cross-appeal, Spigrin Properties, Ltd., contends that the court should not have deducted from its final judgment the interest paid to Smith.
While emphasizing that Smith and his partners were experienced in banking matters, Sun Bank admits that even knowledge on the part of a borrower that a loan may be usurious will not prevent the borrower from later seeking the protection of the usury laws. River Hills, Inc. v. Edwards, 190 So.2d 415 (Fla. 2d DCA 1966). However, the bank argues that the loan was made for legitimate commercial purposes to a bona fide corporation.
Standing alone, the fact that the corporation was organized for the purpose of taking a loan and thereby avoiding the usury laws does not make the loan usurious. Holland v. Gross, 89 So.2d 255 (Fla.1956). In Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla.1969), the supreme court concluded that the evidence was sufficiently parallel to the controlling facts of Monmouth Capital Corp. v. Holmdel Village Shops, Inc., 92 N.J.Super. 480, 224 A.2d 35 (N.J.Super.Ct.Ch.Div. 1966), to adopt the following language of that case:
“Borrower corporation, which was organized because of lender’s legitimate policy of dealing only with corporations, and which had bank account, adopted corporate resolutions in connection with other borrowers, paid real estate taxes, entered into leases with tenants, and acted as valid legal entity, was neither shell nor cloak and was barred by statute from asserting defense of usury in lender’s mortgage foreclosure action where chief stockholder had capable legal advice before forming corporation and was a knowledgeable businessman, notwithstanding that lender’s only reason for dealing with corporations applicable was to be able to charge amount in excess of six percent per annum fixed by statute.”
227 So.2d at 670. On the other hand, where loans are actually made to individuals through corporations formed as devices to evade the usury laws, such loans may be deemed usurious. Atlas Subsidiaries of Florida, Inc. v. O. & O., Inc., 166 So.2d 458 (Fla. 1st DCA 1964); Gilbert v. Doris R. Corp., 111 So.2d 682 (Fla. 3d DCA 1959), cert. discharged, 119 So.2d 792 (Fla.1960).
In construing Florida usury law in Securities Investment Co. of St. Louis v. Indian Waters Development Corp., 501 F.2d 662 (5th Cir.1974), the court of appeals approved an instruction setting forth the following factors to be considered in determining whether a borrowing corporation is a bona fide corporation.
First, whether there had been active stockholders meetings.
Second, whether there had been active directors meetings.
Third, whether the corporation had ever engaged in any form of business prior to the time the loan was made by [the lender].
Fourth, whether the corporation engaged in any form of business after the loan was made.
Fifth, whether the corporation had any employees.
Sixth, whether the corporation had an active checking account.
Seventh, whether the proceeds of the loan were used for the corporation’s business or that of the individual defendants.
Eighth, whether the corporation paid any real estate taxes.
And, ninth, whether the corporation filed any income tax returns.
501 F.2d at 666, n. 5.
There is a fine line between those cases upholding the loans and those finding them to be usurious. Significantly, all of the cases cited above, except for Tel Service, affirmed the holding of the trial court. The holding in Tel Service was limited to the principle that the mere fact that a *244 corporation was formed in order to charge a higher rate of interest, “without more, is insufficient to form the basis for disregarding the corporate entity.” In this case, title was never actually placed in the corporation, and we must view the conflicting testimony of Smith and Keim in the light most favorable to the borrowers. Considering the circumstances surrounding the transaction, we cannot say that there was nothing “more” in the case than the organizing of a corporation to obtain a higher interest rate. Just as in Securities Investment of St. Louis, “[o]n the trial evidence, a factfinder might well have been justified in finding this either a bona fide corporate loan or a sham corporate loan.” Hence, we are bound by the finding of the court below.
We must also accept the court’s factual determinations with respect to the counterclaim. Nevertheless, we conclude as a matter of law that Smith’s participation in the loan to Spigrin, Inc., did not constitute a loan by Smith to Sun Bank. The participation certificate between Smith and the bank provided that the bank would hold the note and the security “for the ratable benefit of the participants in the loan (as used herein, the term ‘participants’ shall include the bank and the Smiths to the extent of the interest of each of them in the note).” In More v. Western Connecticut Title & Mortgage Co., 128 Conn. 360, 23 A.2d 128 (1941), the court concluded that where a mortgage company took a mortgage on real estate and issued participation certificates, each “certificate holder under these agreements was not buying merely an obligation of the company to pay him certain sums of money secured by collateral, but was purchasing a share in certain definite property owned by the compa-ny_” Accord Board of County Commissioners v. Cook, 141 Kan. 677, 42 P.2d 568 (1935), and Croghan v. Savings Trust Co., 231 Mo.App. 1161, 85 S.W.2d 239 (1935). While Smith’s banking sophistication may not constitute an estoppel to the prosecution of the usury action against Sun Bank, he cannot argue that he was inno-. cently lured into participating in a usurious loan.
Accordingly, we affirm the determination that Sun Bank’s loan to Spigrin, Inc., was usurious but we reverse the conclusion that Smith had loaned $75,000 to the bank. Consistent with this rationale, we reverse and remand for the entry of a new judgment for Spigrin Properties, Ltd., in the full amount of $45,514.64 and a judgment for Sun Bank against Smith for three-sevenths of that amount or the sum of $19,-506.27.
RYDER, C.J., and DANAHY, J., concur.