In the Matter of GEMINI AT DADELAND, LTD., Debtor.

Bankruptcy No. 82–01030 BKC TCB.

United States Bankruptcy Court, S.D. Florida.

Sept. 2, 1983.

Bennett Feldman, Miami, Fla., Robert Schatzman, Coral Gables, Fla., for debtor.

Lawrence Rogovin, Miami, Fla., for Irving Trust, the major objecting creditor.

## ORDER DENYING CONFIRMATION OF AMENDED PLAN

JOSEPH A. GASSEN, Bankruptcy Judge.

The Debtor's Amended Plan (the "PLAN") came on for confirmation before

the Court on August 10, 1983 and at continued hearings thereafter.

The Debtor reports that classes of creditors impaired under the PLAN have accepted the PLAN but the class 2 and class 6 creditors, representing a super priority and a secured claim held by IRVING TRUST COMPANY, filed a rejection of the PLAN. The Debtor has requested confirmation notwithstanding the rejection, urging that the provisions of 11 U.S.C. § 1129 apply.

Testimony of the Debtor's representatives, appraisers, a representative of a real estate marketing firm and a Bank official familiar with the Debtor's affairs was offered in support of confirmation. The dissenting creditor, IRVING TRUST COMPANY, also offered appraisal testimony.

After reviewing the PLAN and the evidence in support of confirmation, it must be observed that there is a basic problem with respect to the PLAN proposed by the Debtor in that whatever security exists for the objecting creditor is likely to be further eroded by implementation of the PLAN. Based on the testimony of the appraisers offered by both parties there appears to be extremely marginal, if any, equity in the Debtor's property at present on a liquidation basis.

The Debtor's real estate development has one asset that is now separated into two parts, the improved part (Parcel I) with the existing apartment units, and an unimproved part (Parcel II) in which further development is restricted, by a unity of title agreement and the underlying condominium documents, to a project similar to the existing construction.

Evidence was offered of the sell-out value of the existing units in Parcel I as the Debtor's projected sale prices, but there was no evidence of the present value of those units, especially in view of the ten percent (10%) discount which the PLAN allows to be given.

The evidence that was submitted by the Debtor as to value was predicated on a total value on a projected land cost per unit based on eighty (80) units to be constructed on Parcel II, rather than the planned sixty-four (64) units, which is the number restricted to by the condominium documents and the PLAN. That evidence presents a problem as to how it affects the PLAN proposed by the Debtor.

Additionally, there is a lack of evidence as to the effect on value of the unity of title agreement in the event that Parcel II has to be sold by itself under the provision of the PLAN which requires sale of that parcel in the event that Parcel I is not sold out in one year.

Another fundamental problem exists in that the Debtor is providing no further equity funding or any unsecured borrowing, and the evidence of availability of construction loan financing is not really clear and convincing.

The Debtor's PLAN contemplates further development of the unimproved portion of the property with a secured construction loan as a first lien on Parcel II. If the units do not sell as projected, part of the borrowed funds will be expended for soft costs and administrative expenses. If construction were started and suspended for any reason, there is no evidence that the value of Parcel II would be enhanced by the amount advanced under the construction loan.

Further, there has been no evidence of the nature of safeguards the construction lender will require against mechanics' liens with respect to the proposed construction. The history of Parcel I revealed that inadequate safeguards which permitted the creation of mechanics' liens.

In the application of 11 U.S.C. § 1129, there seems to be little controlling precedential definition of indubitable equivalent. However, on the evidence before the Court, it appears that indubitable equivalent has not been provided for the protection of the secured creditor. The Court finds that the Debtor's projections, even though supported by some opinion evidence, are entirely too speculative to require the secured creditor, IRVING TRUST COMPANY, to assume the risk of the PLAN, especially where the Debtor will have nothing further at risk.

The Court finds that confirmation of the PLAN would require the secured creditor to assume a risk of its implementation without having received the clear indubitable equivalent of its claim. To ask the secured creditor to assume that risk, and trust the Debtor's optimism, is unfair, and the Court believes that it falls short of the Debtor's obligation to propose a Plan under 11 U.S.C. § 1129(b)(2) that is fair and equitable.

Based on the foregoing conclusions, it is:

ORDERED as follows:

1. Confirmation of the Debtor's Amended Plan is denied.

2. The Debtor may file a Second Amended Plan by September 30, 1983.

3. If a Second Amended Plan is filed timely, a hearing will be held on October 11, 1983 at 8:30 a.m., Courtroom 1410, Federal Building, 51 Southwest First Avenue, Miami, Florida, to determine whether or not there is a reasonable basis for the Court to proceed with the confirmation process of such Second Amended Plan in view of the Court's Findings and Conclusion.