**In re SMITHFIELD ESTATES, INC., Debtor.**

**Bankruptcy No. 8300715.**

United States Bankruptcy Court, D. Rhode Island.

Aug. 9, 1985.

Frank Licht, Robert N. Huseby, Sr., Letts, Quinn & Licht, P.C., Providence, R.I., for debtor.

Charles L. Schlumberger, Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff.

Virginia A. Greiman, trustee, Office of the U.S. Trustee, Boston, Mass.

## DECISION DENYING CONFIRMATION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Taken under advisement after hearing on confirmation of the Chapter 11 Plan of Reorganization filed by Smithfield Estates, Inc., and on the objection of the United States Department of Housing and Urban Development (HUD). HUD, the largest creditor in this case, is deemed to be impaired under the plan,[1] but the debtor urges nevertheless that the cram-down provisions of 11 U.S.C. 1129(b) be invoked and that the plan be confirmed over HUD's objection.

The debtor's only asset is a seven building apartment complex called Villa Versailles, located in North Providence, Rhode Island.[2] HUD holds the mortgage on this property in the principal amount of $2.9 million, but pre-petition and post-petition arrearages increase to approximately $4.8 million the amount now owed on the accelerated indebtedness. The relationship between HUD and this debtor has always been strained, but after long periods of unproductive negotiations, the debtor's sole shareholder and principal, Joseph Matteo, has completely exhausted whatever trust

---

1. An Amended Plan of Reorganization was filed on August 21, 1984, and the disclosure statement was approved on April 12, 1985. A modification of the plan was filed on May 29, 1985, during the confirmation hearing, which was concluded on that date. Under either plan, HUD is impaired.

2. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

and good will may have once existed on HUD's part.

After an earlier hearing on HUD's Motion for Relief From Automatic Stay, we issued a decision denying the relief requested. *See United States of America v. Smithfield Estates, Inc. (In re Smithfield Estates, Inc.)*, 48 B.R. 910 (Bankr.D.R.I. 1985).[3] The debtor proposed to convert the property from rental apartments to condominium units, and based on the evidence, we concluded at that time that there was a marginal equity cushion in the property. However, because the equity was slim at best, denial of HUD's motion was expressly conditioned upon the debtor commencing forthwith to make regular payments to HUD, and to cure the post-petition default within six months, beginning May 1985. It was "expressly not intended that any part of this order should be stayed pending the outcome of the hearing on confirmation." *Id.* at 915. As initial comment on the debtor's good faith, we observe that the debtor has failed entirely to comply with the firm conditions imposed by this Court, and has not made any of the payments ordered. *See* 11 U.S.C. § 1129(a)(3), requiring that the plan be proposed in good faith.

## THE PLAN

As previously noted, *see supra* note 1, the amended plan submitted on August 21, 1984 was further modified at the hearing on confirmation. Below is a review of what we will refer to as the second amended plan and the cram-down proposal as to HUD.

1. The first amended plan proposed a condominium conversion program funded by an infusion of capital by investors in a limited partnership, by rents, and by condominium sale proceeds. At the May 29 hearing the condominium conversion idea was abandoned, and proposed instead was an outright sale to a real estate joint venture known as Milestone Associates, which intends to continue operating the property as an apartment complex, and which does not foresee conversion into condominiums.

2. Under the latest plan the debtor's principal, Joseph Matteo, will receive a promissory note in the amount of $475,000, and an immediate cash payment of $275,000 upon confirmation.

3. HUD is scheduled to be paid $4.8 million over twelve years, with $600,000 to be paid upon confirmation.

4. The terms of the sale to Milestone Associates require that HUD be ordered to terminate all actions and proceedings against the debtor, and that all administrative rules and restrictions by HUD be held in abeyance during the time required to complete the plan. In short, the plan requires HUD to cease all regulatory enforcement activity, and to behave as a conventional financier.

## 11 U.S.C. § 1129(b) CRAM-DOWN REQUIREMENTS

■ For a plan of reorganization to be confirmed it must comply with all the requirements of Chapter 11, as provided in 11 U.S.C. § 1129(a)(1). This is so even if there are no objections to confirmation. *See In re Economy Cast Stone Co.*, 16 B.R. 647, 650 (Bankr.E.D.Va.1981). Section 1129(b) provides:

> (b)(1) [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

■ HUD contends that the plan fails in several key respects to satisfy the requirements of § 1129(a), thereby making any consideration of cram-down under § 1129(b) impermissible. Without going through HUD's complete list of alleged deficiencies, we agree that the plan clearly

**3.** Refer to our April 12, 1985 decision concerning the debtor, its relationship with HUD, and our findings concerning the requested relief from automatic stay.

fails to satisfy a number of important requirements.

■ 11 U.S.C. § 1129(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law," and the bankruptcy court must inquire into the debtor's conduct as a whole in determining whether the plan was filed in good faith. *See In re Madison Hotel Assoc.*, 29 B.R. 1003 (W.D.Wisc.1983). As HUD emphasizes, the debtor is in clear violation of our April 12, 1985 Order which spells out express conditions to the continuation of the automatic stay. Because of the debtor's refusal or inability to make the required post-petition mortgage payments to HUD, the debtor's good faith is called into serious question.

The debtor's shortage of good faith is also evident in the last minute buy-out scheme presented, without notice, at the hearing on confirmation. Under this second amended plan, Matteo would receive $275,000 immediately upon confirmation, and a $475,000 note payable at 11% interest. The attempt to give such favorable treatment to this particular insider is so patently unfair that it is one of the easier decisions we have recently been called upon to make, and is rejected without further comment.

■ 11 U.S.C. § 1129(a)(11) requires a feasibility test, because it must be determined that confirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization. *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653 (Bankr.D.N.J.1980). After considering the testimony of Barry Liebert, managing partner of Milestone Associates, we are convinced that a take-over by Milestone would not generate sufficient operating capital to fund this, or any other reasonable plan. According to Mr. Liebert, Milestone has been contemplating the acquisition of Smithfield Estates, Inc. for less than two weeks, and in that time has not had the opportunity to review the debtor's profit and loss statements for either 1983 or 1984 although the figures have been on file with the Court for quite some time.

These statements disclose annual net losses by the debtor, even though the $30,000 monthly mortgage payments to HUD were not made during these periods. Although Liebert testified, when shown the profit and loss records, that he was not concerned about the project's losses for those years, the ability of the prospective buyer to net from this rental operation at least an additional $30,000 each month to satisfy the payments to HUD is too speculative to support a conclusion that this is a feasible plan, notwithstanding Mr. Liebert's optimism regarding his group's ability to turn the business around.

■ Even assuming that the plan satisfied all the requirements of 11 U.S.C. § 1129(a), it must also be "fair and equitable" to impaired non-accepting classes of creditors, under the absolute priority doctrine of 11 U.S.C. § 1129(b)(2). *See In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr.S.D.N.Y.1982).

The § 1129(b)(2) cram-down provisions of the Code provide in part:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens,

with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

■ Preliminary to any discussion of the cram-down provisions of 11 U.S.C. § 1129(b), we must address the question of the value of HUD's secured claim. Under the second amended plan, presented without prior notice at the hearing on confirmation, the debtor's proposal for condominium conversion was abandoned, and the debtor now proposes to sell the property as an apartment complex. HUD presumes, we think incorrectly, that it is a secured creditor in the amount of $4.5—5 million, based upon our previous determination of value in response to the hearing on HUD's motion for relief from automatic stay. *In re Smithfield Estates, Inc., supra* at 912. A valuation for one purpose, however, is not *res judicata* as to a valuation for a different purpose, *e.g.,* confirmation. *See* Klee, "All You Ever Wanted To Know About Cram-Down Under the New Bankruptcy Code," 53 Am.Bankr.L.J. 133, 152 (Spring 1979). Determinations of the extent to which a claim is secured may occur at several stages during a case, depending upon the purpose of the valuation, and the method used for valuing the collateral.

*See* 11 U.S.C. §§ 502(j) and 506(a). The so-called "going concern value" of the property, i.e. "what some appraisers believe the current market value of the distressed company ought to be if the present market were like the future they foresee ...,"[4] is clearly affected by the proposed disposition or use of the collateral, and by the terms of the proposed plan affecting the creditor's interest. *See* 11 U.S.C. § 506(a) and Klee, *supra* notes 115 and 118, at 152. Likewise, the value of a creditor's interest in property "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing ... on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Therefore, our previous determination of value based on the now abandoned condominium proposal should be reconsidered in light of the current plan to operate the property as rental units. As an apartment complex, Milestone intends to make a relatively small investment ($150,000 to refurbish the entire complex). This is a weak comparison with the capital improvements proposed under the condominium conversion scheme, whereby an initial cash injection of $150,000 was promised to fund the conversion of the first building, with additional capital outlays made as each remaining building was converted, over a four year period. It is readily apparent that HUD's security interest would be better protected with the property being converted to condominiums, than if it remains an apartment complex with only minor rehabilitation even contemplated—let alone accomplished. With these observations in mind, we re-examine the appraisal testimony in light of the present proposed use of the subject property as an apartment complex.

At the previous hearing, HUD's appraiser testified that the value of the real estate as rental property was $3.3 million, and the debtor's appraiser placed the value at $5.2 million. *In re Smithfield Estates, Inc.,*

---

**4.** Blum, "The Law and Language of Corporate Reorganization," 17 U.Chic.L.Rev. 565, 578 (1950); *see also* Pusateri, "Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect?", 58 Am.Bankr.L.J. 129, 139 (Spring 1984).

*supra* at 912. For the reasons stated in that decision, *id.*, we consider neither appraisal to be completely reliable. The rental values considered by HUD were at below-market levels and were based upon figures then more than a year old. On the other hand, the debtor's appraisal was conducted more recently, in August 1984, but is weakened considerably by the fact that several of the comparables used were newer properties (and not condominium conversions), or were in much more desirable locations than the subject property, some situated on or near waterfront. Still recognizing the subjectivity of real estate valuation in general, and because of the vulnerability of the appraisals before us, we conclude after considering all of the evidence, that the value of the debtor's real estate, in its present condition and for its most recently proposed use, is approximately $4 million. Although the debtor has not separately classified HUD's claim of $4.8 million, that claim must now be treated as two separate items: (1) a secured claim in the amount of $4 million and (2) an unsecured claim in the amount of $.8 million. *See* 11 U.S.C. § 506(a); *In re Pine Lake Village Apartment Co., supra.*

■ The second amended plan does not distinguish HUD's secured claim of $4 million from the unsecured (deficiency) claim of $.8 million, and provides that after a cash payment of $600,000 on confirmation, the balance will be paid over 12 years, to yield a total of $4.8 million. Under § 1129(b), this plan is not fair and equitable, either with respect to the treatment of HUD's secured claim or of the unsecured portion of its claim.

■ Section 1129(b)(2)(A), regarding secured claims, says that a plan may be fair and equitable if: (1) the creditor retains its lien; and (2) the creditor receives deferred cash payments totaling the face amount of the claim and the payments have a present value equal to the value of the creditor's interest in the collateral. *See In re Landmark at Plaza Park, Ltd., supra* at 656. Under the latest proposal, HUD retains its lien, and is supposed to receive at least the $4 million face amount of its secured claim; however, the deferred cash payments reduced to their present value are considerably less than the value of HUD's interest in the property. In today's dollars, HUD would receive, at the end of 12 years, the equivalent of about $2.6 million.[5] Since HUD will not receive payments equalling the value of its collateral, the debtor must supply the "indubitable equivalent" of the claim. *See In re Gemini at Dadeland, Ltd.*, 36 B.R. 129 (Bankr. S.D.Fla.1983); and § 1129(b)(2)(A)(iii). There has been no indubitable equivalent offered to HUD, and the proposed cash payments, which are less than the value of the collateral, do not satisfy the standard. *See Klee, supra* at 156; 124 Cong.Rec. H11,104 (daily ed. Sept. 28, 1978). We therefore conclude that the plan is not fair and equitable as to HUD's secured claim of $4 million.

■ Addressing next the treatment of HUD's unsecured $.8 million claim, § 1129(b)(2)(B) establishes an absolute priority rule which requires that a senior class of debt be paid *in full* before a junior class may receive any property. *See In re Landau Boat Co.*, 8 B.R. 436, 4 C.B.C.2d 207 (Bankr.W.D.Mo.1981). Under the pending plan there is no provision to pay HUD's unsecured claim in full, yet the debtor's principal stockholder, Matteo, is to receive a cash payment of $275,000 upon confirmation. It is fundamental that general creditors are entitled to priority over stockholders to the extent of the allowed amount of their claims. *See Case v. Los Angeles Lumber Products Co., Ltd.*, 308 U.S. 106,

---

**5.** Thirteen percent was selected as the appropriate discount rate, based upon the present 11% rate one would earn investing in twelve year treasury bonds, considered to be risk free instruments. *See* Treasury Bond rate in *The Wall Street Journal*, May 13, 1985. A higher discount rate is indicated when the risk of not meeting the payment schedule is increased, as for example, in the bankruptcy context. The risk involved as to the certainty of payments in this case clearly requires a 2% increase over government bonds. *See In re Willis*, 6 B.R. 555, 6 B.C.D. 1101 (Bankr.N.D.Ill.1980).

60 S.Ct. 1, 84 L.Ed. 110 (1939); *accord Consolidated Rock Products Co. v. Du-Bois*, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141 (Bankr.S.D.N.Y. 1984); *In re Pine Lake Village Apartment Co., supra.* For a stockholder (junior class) to receive property ahead of a non-insider general creditor (senior class) would be most inappropriate, and in this case would be ludicrous. The plan is not fair and equitable in its treatment of HUD's unsecured claim, and therefore cannot be crammed-down over HUD's rejection.

The plan submitted by Smithfield Estates, Inc. has failed to satisfy even the most basic requirements of 11 U.S.C. § 1129(a) and (b). For the reasons stated, confirmation must be denied, and in light of the entire record in this case, the stay must be vacated.

Enter Judgment accordingly.