### In the Matter of YALE EXPRESS SYSTEM, INC.

United States District Court
S. D. New York.
July 16, 1965.

Royall, Koegel & Rogers, by William R. Glendon, New York City, for trustee.

Seligson & Morris, by Charles Seligson, New York City, for debtor.

Sullivan & Cromwell, by John W. Dickey, New York City, for Marine Midland Trust Co.

TYLER, District Judge.

The Marine Midland Trust Company of New York ("Marine") here opposes a motion by the trustee in this Chapter X proceeding to turn over to the debtor certain property alleged to be that of Yale Express System, Inc. ("Yale" or "the debtor") which Marine has purported to set off under a claim that it is a creditor of Yale.

At the time when this turnover application was originally filed by the trustee, counsel for Marine, citing In re Eakin, 154 F.2d 717, 719 (2d Cir. 1946) and similar cases, took the position that the issues here involved could not be disposed of summarily but must be litigated in a plenary trial. Although this position, in my view, is of doubtful validity, the point is no longer of any practical moment in that Marine has consented to go forward on the affidavits and the various legal memoranda submitted by the interested parties from time to time during meetings on this question.

In any event, from the very documentary exhibits submitted by Marine on its motion to dismiss this turnover application, the following facts are found. As of December 15, 1961, Yale entered into a financing agreement entitled the "Credit Agreement" with the First National City Bank ("FNCB"). Thereafter, on December 21, 1962, a superseding agreement entitled the "New Credit Agreement" was executed by Yale and FNCB. Except as to dates and amounts, it was substantially similar to the original Credit Agreement. By its terms, FNCB agreed to make certain advances from time to time at the request of Yale up to certain specified limits at stipulated rates of interest. The New Credit Agreement provided for termination of the borrowing period on specified dates unless extended by mutual agreement of the two parties. All payments and pre-payments expressly were to be made by Yale to FNCB and no one else. Other provisions fixed various fees and service charges to be paid by Yale to FNCB. Incident to the main contract were various security agreements executed by Yale for the benefit of FNCB. The New Credit Agreement made no mention whatsoever of Marine and, thus, was not signed by Marine as a party.

Previously, on December 15, 1961, FNCB had entered into a letter agreement with Marine whereby FNCB undertook to "lay off" a portion of its advances under the original Credit Agreement with Yale. A similar participation agreement was entered into by FNCB and Marine following the execution on December 21, 1961 of the New Credit Agreement between FNCB and Yale. Essentially, the participation agreement between FNCB and Marine provided that the former was to give and that Marine was to take "an undivided 40% participation" in each advance to be made by FNCB under the New Credit Agreement. It is undisputed that Marine contributed $4,250,000 to the loan made by FNCB to Yale under the latter agreement. FNCB retained the sole discretion to agree on extensions of the borrowing period of the credit agreement, and Marine was expressly relieved of the obligation to participate past the original termination date upon giving required notice to FNCB.

Interestingly, FNCB also retained the sole right to agree, without the consent of Marine and without giving prior notice to the latter bank, to changes in the terms of the credit agreement with Yale or of any underlying security agreement

or arrangements thereunder, except for changes in the terms of payment of principal, interest, premiums or fees.

In the event of default by Yale, FNCB agreed to notify Marine thereof but retained sole discretion to exercise or refrain from exercising any remedy in connection with any such default. None of the agreements or related documents gave Marine any right whatsoever to receive any payment from Yale. Essentially, Marine's only right was to be paid by FNCB an agreed share of whatever funds, if any, were paid or repaid by Yale to FNCB.

The subject of this dispute is a credit balance of $361,739.71 in a bank account maintained by Yale at Marine. Since May 24, 1965, the day Yale filed its petition for reorganization, Marine has refused to honor any checks drawn by the debtor on such account,[1] and of course, it is this account which Marine purports to "set off" in this proceeding.

 Although Marine has fashioned an intricate argument, based largely upon Section 151 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, and Section 68 of the Bankruptcy Act, that it is a creditor of Yale and thus entitled to set off the bank account which it held for Yale at the time Yale petitioned for reorganization, I find that the provisions of the participation agreement between Marine and FNCB, particularly when read in the light of the various agreements between Yale and FNCB, negate the existence of any such creditor status as Marine now claims.[2] Simply stated, Marine advanced money only to FNCB. Repayment of any amount advanced to FNCB by it under the participation agreement was made or to be made by FNCB, and its right to repayment would arise only upon the receipt by FNCB of payment from Yale. All rights to extend or amend the substantial terms of the credit agreement were lodged solely with FNCB. Upon any default by Yale, FNCB alone had the power to act respecting such default or defaults. In addition, FNCB had the option to repurchase Marine's stipulated participation interest. Finally, it is not surprising to note that FNCB has made claim as a creditor for the entire amount of the loan to Yale remaining unpaid, including Marine's participation therein.

Without extended discussion, therefore, I hold that Marine was not and is not a creditor entitled to set off the bank account in the amount $361,739.71 which Yale had with Marine at the time of the filing of the petition for reorganization.

 This would be sufficient to dispose of the matter were it not for the argument of Marine that, notwithstanding the plain terms of the pertinent agreements, extrinsic parol evidence of various meetings and conferences between representatives of FNCB, Marine and Yale requires a determination that Marine was and is an "equitable creditor" of Yale. Even accepting as true all of the voluminous affidavit statements submitted by Marine to establish that Yale was aware of, acquiesced to and indeed applauded Marine's participation, such circumstances do not suggest that the substance or character of the written agreements was in any way modified. Indeed, the very tenor of the various meetings and conferences suggests that if any novations of the agreements had

1. For the purposes of these motions, I assume, without deciding, that Marine is correct in arguing that nothing in the corporate banking resolutions signed by Yale for the opening of this account indicates or confers any "special restrictions" upon such account—i.e. that this is a "general purpose" account.

2. Parenthetically, it might also be observed that even if Marine were determined to be a creditor of Yale, it does not necessarily follow that controlling federal law would require or permit a set-off in a Chapter X proceeding, particularly where to do so would jeopardize chances for a successful reorganization. See 11 U.S.C. 108; Lowden v. Northwestern National Bank & Trust Co., 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936); Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783, 787 (3d Cir. 1949).

been intended or desired by the parties, such easily could have been there and then effected. In any event, it is hornbook law that the parties to agreements are presumed to have intended just what their agreements set forth.[3] That Yale may have known of, approved of, or requested Marine's participation does not establish a modification or novation of the agreements or in any manner raise Marine to the status of creditor in these circumstances.

The application for turnover of the proceeds of this account is granted, and, of course, Marine's motion to dismiss such application is denied in all respects.

Settle order accordingly.

---

3. Which proposition, it is interesting to note, is in effect recognized by the

Senior Vice President of Marine in his reply affidavit of July 13, 1965. (page 7).