The MASON & DIXON LINES, INC., Central Transport, Inc., and GLS LeasCo, Inc., Appellants,

v.

The FIRST NATIONAL BANK OF BOSTON, Appellee.

Civ. Nos. C–87–235–G, C–87–462–G.

United States District Court, M.D. North Carolina, Greensboro Division.

May 10, 1988.

William L. Stocks, Greensboro, N.C., for Mason & Dixon.

Patrick A. Moran, Michael A. Nedelman, Birmingham, Mich., for Central and GLS.

Rayford K. Adams, III, Greensboro, N.C., Joseph L. Kociubes, Eileen Hagerty, Boston, Mass., for First Nat. Bank of Boston.

## MEMORANDUM OPINION

BULLOCK, District Judge.

The Mason & Dixon Lines, Inc., and its parent companies Central Transport, Inc., and GLS LeasCo, Inc., (hereinafter referred to collectively as "Mason & Dixon" or "Appellants") take these consolidated appeals pursuant to 28 U.S.C. § 158(a) and Bankr. Rule 8001(a) from two final orders of the United States Bankruptcy Court for the Middle District of North Carolina. The court's order of February 10, 1987, granted summary judgment for The First National Bank of Boston ("FNBB") and imposed sanctions on Appellants under Bankr. Rule 9011. Appellants challenge the propriety of the bankruptcy court having decided the matter before expiration of the discovery period, and its denial of their motion for a continuance. Appellants also argue that summary judgment was inappropriate on the record before the bankruptcy court, and that in any event the action was neither frivolous nor filed for an improper purpose so the imposition of sanctions was an abuse of discretion. On March 26, 1987, the bankruptcy court filed a second order, which allowed FNBB's claims in full and denied Appellants' objections. Appellants contend that the bankruptcy court erred in determining the allowable amount of the claims and in granting interest and expenses under 11 U.S.C. § 506(b).

## FACTS

On May 6, 1971, Mason & Dixon and FNBB entered into a contract entitled "Credit Agreement" whereby FNBB agreed to provide periodic advances to Mason & Dixon. As collateral for the loan account, Mason & Dixon granted FNBB a security interest in its "vehicles," including its rolling stock and aircrafts. Mason & Dixon subsequently augmented the collateral by granting FNBB a security interest in accounts receivable. FNBB perfected each of these security interests in its own name.

The credit agreement (§§ 4.4 and 8.3) anticipated that FNBB would offer participations in the loan account to other lenders.[1] In fact, on the same day FNBB also reached an agreement with The Third National Bank of Nashville, Tennessee ("Third National") in accordance with which FNBB credited Third National with an undivided fifty per cent (50%) interest in the loan account. The "participation agreement" permitted adjustments in the applicable percentages. As of March 29, 1984, FNBB was credited with 58.8889% of the account and Third National had 41.1111%. At all relevant times FNBB held the security interest and serviced the loan, receiving all collections directly from and making all advances directly to Mason & Dixon.

On March 29, 1984, Mason & Dixon filed for reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 501(a) FNBB filed a proof of claim as a secured creditor in August 1984, listing the entire aggregate principal balance (roughly $18,000,000) of the loan outstanding. FNBB did not indicate that it represented

---

1. A participation usually involves the "selling" of an undivided percentage of a loan or series of loans to a second bank, which in turn receives that portion of all collections and is responsible to the first or "lead" lender for the same percentage of subsequent advances and costs. *See* Armstrong, *The Developing Law of Participation Agreements,* 23 Bus. Law. 689 (1968).

anyone else in filing the proof of claim. From March 1984 to September 1986, in accordance with the reorganization plan, Mason & Dixon paid approximately $17,-000,000 to FNBB.[2] The bankruptcy court confirmed a restated joint plan of reorganization on March 29, 1986. Mason & Dixon subsequently filed the objections to FNBB's claim and then the adversary proceeding in the bankruptcy court seeking to recover approximately $6,000,000 from FNBB on the ground that FNBB could properly claim only 58.8889% of the outstanding balance on the loan, amounting to approximately $10.6 million. Mason & Dixon contended that the remainder of the balance was owed not to FNBB but to Third National, and that FNBB was not entitled to the overpayment. FNBB responded that the loan relationship is solely between Mason & Dixon and FNBB; the participation does not make Third National a separate creditor of Mason & Dixon such that only Third National, and not FNBB, would be entitled to file a proof of claim for the other 41.1111%.

## DISCUSSION

### I. *The Adversary Proceeding*

#### A. *Summary judgment*

The bankruptcy court granted FNBB's motion for summary judgment because it found an absence of issues of fact and decided that the sole question of law was resolvable from the language of the agreements. *See* Fed.R.Civ.P. 56(c). The court accepted the relationship between FNBB and Third National as a loan participation and determined that it did not affect the underlying credit agreement between Mason & Dixon and FNBB. The court then concluded that since FNBB's status as creditor for the loan account was not altered by the separate participation agreement FNBB was entitled to file proof of claim for the entire amount.

A bankruptcy court's findings of fact are not to be disturbed unless clearly erroneous, Bankr. R. 8013; *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985), but

questions of law should be reviewed *de novo* on appeal. *In the Matter of Bufkin Bros., Inc.*, 757 F.2d 1573, 1577–78 (5th Cir.1985); *see also Caswell v. Lang*, 757 F.2d 608, 609 (4th Cir.1985).

This court does not find the bankruptcy court's treatment of the relationship between FNBB and Third National as a typical loan participation to be clearly erroneous. Generally, the terms of the participation agreement govern the relationship between the parties, unless the agreement is ambiguous. *In re Continental Resources Corp.*, 799 F.2d 622, 624 (10th Cir. 1986) (citing *Hibernia National Bank v. Federal Deposit Ins. Corp.*, 733 F.2d 1403, 1408 [10th Cir.1984]); *In re Yale Express System, Inc.*, 245 F.Supp. 790, 792 (S.D.N.Y.1965); Hutchins, *What Exactly is a Loan Participation?*, 9 Rut.–Cam.L.J. 447, 458 (1978). In this case, the contract between FNBB and Third National was entitled a "Participation Agreement," and its provisions were consistent with the definition of a participation in that they defined an arrangement whereby FNBB, as the lead lender, assigned an undivided percentage interest in Mason & Dixon's loan account to the participant, Third National. *See Hibernia*, 733 F.2d at 1407 (citing *Armstrong*, 23 Bus.Law. at 689–90, 692–94); *Yale Express*, 245 F.Supp. at 791; MacDonald, *Loan Participations as Enforceable Property Rights in Bankruptcy*, 53 Am.Bankr.L.J. 35, 38–39 (1979). In addition, the agreement provided for FNBB to service the loans to Mason & Dixon and to retain the collateral in its name, two other common characteristics of loan participations. *See First State Bank v. Towboat Chippewa*, 402 F.Supp. 27, 33 (N.D.Ill. 1975); MacDonald, 53 Am.Bankr.L.J. at 42; Hutchins, 9 Rut.–Cam.L.J. at 448; Stahl, *Loan Participations: Lead Insolvency and Participants' Rights*, 94 Banking L.J. 882, 883 (1977); Armstrong, 23 Bus.Law. at 690.

Appellants contend that because Third National was the source of some of the advances made to Mason & Dixon the rela-

2. The specific figures are discussed *infra* at page 482.

tionship is actually a joint loan involving separate creditors. However, a principal reason for entering into, and a common term in, participation agreements is that the participant will supply the percentage of funds for each advance which is commensurate with its percentage interest in the loan and the collections thereon. This allows a lead lender to provide a larger total amount of funds to its borrower, and to stay within the lending limits established by the banking laws. *See Yale Express,* 245 F.Supp. at 792; *Hutchins,* 9 Rut.–Cam. L.J. at 449. Therefore, the bankruptcy court's implicit finding was not erroneous, but was indeed compelled by the language of the agreement and the law.

The legal question focused on by the bankruptcy court is the effect of the participation agreement on the underlying credit agreement between FNBB and Mason & Dixon. Had FNBB not granted any participation it clearly would have remained the only creditor on the loan. Appellants contend that FNBB's transfer of the percentage interest made Third National a separate creditor as to that percentage of the outstanding balance, such that FNBB was not entitled to file proof of claim for the entire amount.

In support Appellants cite *Franklin v. Commissioner of Internal Revenue,* 683 F.2d 125 (5th Cir.1982), in which the Fifth Circuit said that a sale of participations converted the borrower's creditors from one bank to a group of banks, regardless of which bank serviced the loan and regardless even of whether the debtor knew of the participants. 683 F.2d at 129. Mason & Dixon argues that if Third National is a separate creditor then it had to file proof of claim in its own behalf, and FNBB could not do so for it, at least without indicating that FNBB was acting as agent for Third National. However, *Franklin* is not conclusive on the issue of whether Third National is a creditor.

In the first place, *Franklin* is distinguishable on its facts, in that it involved an issue which did not affect the rights or interests of the lead or the participants. The borrower sought to take as a tax de-

duction, to the extent of the participant's interest, his payment of interest on the loans, which he made with funds obtained by a different loan from the lead. *Id.* In contrast, treating Third National as a separate creditor for purposes of filing a proof of claim in bankruptcy imposes upon a participant an active obligation to protect its interests, in a situation in which the participant has never before been directly involved.

In factual circumstances somewhat more similar to those involved here two district courts have found multiple filing unnecessary. *First State Bank v. Towboat Chippewa,* 402 F.Supp. 27 (N.D.Ill.1975); *In re Fried Furniture Corp.,* 293 F.Supp. 92 (E.D.N.Y.1968), *aff'd,* 407 F.2d 360 (2d Cir. 1969). In *Fried Furniture* the court acknowledged the Small Business Administration's lien on the debtor's property, despite the fact that the SBA, as participant, had not made a separate UCC filing and the lead lender's filing indicated that it had made the entire loan. 293 F.Supp. at 93. The court said that there was no point in requiring each contributor of funds to file a separate piece of paper, because whether the lead was sharing the risk did not matter to the creditors, and no one was prejudiced by the form of the filing. *Id.* Nor should it matter to the borrower, particularly where, as here, the borrower knew about the participation all along. *See also Towboat Chippewa,* 402 F.Supp. at 34–35 (participants who have been essentially unidentified parties to loans between the lead and the borrower need not separately comply with requirements of the Ship Mortgage Act to preserve mortgage).

Secondly, where the participant never played an active role with respect to the loan several courts and commentators have concluded that the participant is not a creditor. *See, e.g., Ten Mile Indus. Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1525 (10th Cir.1987) (participants acquire no rights against borrower because they are not creditors) (citing *Hibernia,* 733 F.2d at 1407); *Depositors Trust Company of Augusta v. Frati Enterprises, Inc.,* 590 F.2d 377, 379 (1st Cir.1979) (holder of note, not the 100% participant, is

borrower's creditor). In *Hibernia*, the Tenth Circuit allowed borrowers to off-set the deposits in their accounts with an insolvent lead against the balances owed on loans. A participant in those loans, who was credited with up to 100% of some of them, sought to prevent the off-set. The Tenth Circuit ruled that where the lead retained the loan documents, serviced the loans, and remitted to the participant its portion of the payments and collections the participant did not have ownership rights against the borrower. 733 F.2d at 1405–08. In contrast, the court recognized the participant's rights as to loans in a loan pool, for which the participant held the loan documents, contacted borrowers, and actually selected the loans to be in the pool. *Id.* at 1405–06.

Much earlier, a district court had similarly ruled that a participant was not a creditor of the borrower in bankruptcy, and did not allow the participant to set off the borrower's bank account against the participant's percentage of the outstanding loan. *Yale Express*, 245 F.Supp. at 792. Interestingly, the lead lender in *Yale Express* had filed a claim for the entire amount of the loan, including the participant's 40% undivided interest.

■ Based on an examination of this case law and other materials, this court is satisfied that participants are not generally creditors of the borrower. Accordingly, any collections and filing of proofs of claim in bankruptcy should be made by the party to whom the underlying obligation is owed, namely the lead lender. *See generally* Armstrong, 23 Bus.Law. 689.

The provisions in the documents cited by Appellants as evidencing a contractual relationship between Mason & Dixon and Third National (§§ 4.4, 4.7 and 8.3 of the credit agreement and ¶ 2 of the participation agreement) relate to collateral concerns, such as balance deficiency fees and set-off, and do not create a direct debtor-creditor relationship between Third National and Appellants, with respect to the original loan. *See* Armstrong, 23 Bus.Law. at 694. They were simply intended to protect the participants' interest, particularly in the event of the lead lender's insolvency. *See, e.g., In re Erie Forge & Steel Corp.*, 456 F.2d 801 (3d Cir.1972) (where the agreements did not provide for set-off a true participant is not a creditor of debtor and cannot set off the debtor's deposits when the lead is insolvent). Nor did those provisions effect a novation, substituting Third National for FNBB to the extent of its interests. Despite recognition of the participant's involvement Mason & Dixon did not excuse FNBB from any part of its obligation, or alter FNBB's rights as against its borrower.

Therefore, because the language of the documents unambiguously creates credit and participation agreements between distinct parties, and because as a matter of law a lead lender may file proof of claim for the entire amount of the debt under its agreement with the borrower, the bankruptcy court's grant of summary judgment was appropriate and will be affirmed.

## B. *Granting the motion before termination of discovery*

■ Appellants contend that the bankruptcy court abused its discretion in refusing to defer its ruling until the close of the discovery period. Appellants had outstanding discovery requests and they assert that FNBB's responses to those requests may have clarified the nature of the relationship between FNBB and Third National.

The bankruptcy court believed, and this court agrees, that the only genuine issue in this case was one of law, such that any further evidence would apply only to peripheral issues. As previously stated, the relationship among the parties is controlled by the language of the contract unless ambiguous. *Continental Resources*, 799 F.2d at 624; Armstrong, 23 Bus.Law. at 689. The bankruptcy court did not find the language of the participation agreement to be ambiguous, there is no evidence of a defect in formation, and the detailed nature of the writing indicates that the agreement was meant to be a complete integration. Therefore, additional parol evidence will not be admitted to alter the legal effect of

the writings. *See id.* at 626; *see also Hibernia,* 733 F.2d at 1408; *Yale Express,* 245 F.Supp. at 792; E. Farnsworth, *Contracts,* 452–61 (1982). Moreover, Appellants do not indicate what they reasonably expect to find that might rebut the apparent intent of the parties to the participation agreement. Accordingly, the bankruptcy court's decision to rule before the end of discovery was not an abuse of discretion.

### C. *Sanctions*

Finally, Appellants contest the imposition of sanctions under Bankr. Rule 9011(a). The version of Rule 9011(a) in effect at the time of the bankruptcy court's ruling provided in pertinent part:

The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for an improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.[3]

Rule 9011 is patterned after Federal Rule of Civil Procedure 11. In imposing sanctions under Rule 11 the court should judge a party's conduct under a standard of objective reasonableness. *Forrest Creek Assoc., Ltd. v. McLean Savings & Loan Ass'n,* 831 F.2d 1238, 1244–45 (4th Cir.1987) (citing *Stevens v. Lawyers Mutual Liability Ins. Co. of North Carolina,* 789 F.2d 1056, 1060 [4th Cir.1986]). Once the decision to impose sanctions has been made, in this circuit the rule is to reverse such decision on appeal only if it amounts to an abuse of discretion. *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.,* 827 F.2d 984, 987 (4th Cir.1987) (citing *Stevens,* 789 F.2d at 1060); *see also Forrest Creek,* 831 F.2d at 1244; *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985) (specifically involving the bankruptcy court); *but see Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986) (*de novo*

appellate review of legal conclusion that facts constitute violation of Rule 11).

The bankruptcy court found that this adversary proceeding and the Joint Supplementary Objections regarding FNBB's right to claim the entire amount of the loan were frivolous and were filed for the purpose of harassment and delay. The court apparently based this determination on the fact that it considered the legal relationship among the involved persons to be clear, and that Mason & Dixon waited until after confirmation of the reorganization plan to raise objections, despite having known about Third National's participation for a substantial period of time. Under the circumstances of this case this court does not find that the bankruptcy court abused its discretion.

First, as stated above, the relationships among Mason & Dixon, FNBB and Third National were not atypical and deserving of unusual treatment. In this situation a lead lender can file proof of claim for the entire amount of a loan made under a credit agreement solely between the borrower and the lead. Although the mere fact that Appellants' claim did not prevail does not mean that the action was frivolous, *Forrest Creek,* 831 F.2d at 1244, if the contentions are not "well grounded in fact and ... warranted by existing law or by a good faith argument for [its] extension" they violate Rule 9011.

This court lacks the bankruptcy court's familiarity with the nuances of bankruptcy law. Therefore, some detailed consideration of the legal issue was appropriate before this court could reach a conclusion that had been readily apparent to the bankruptcy court. After examining the law and considering the circumstances, this court cannot conclude that the Appellants' decision to file this suit was objectively reasonable within the meaning of Bankr. Rule 9011, or that the imposition of sanctions was an abuse of the bankruptcy court's discretion.

Furthermore, Rule 9011, like Rule 11, requires both that the claim be grounded in

---

**3.** Rule 9011(a) was amended effective August 1, 1987, but the changes are inconsequential.

fact and law *and* that it not be pursued for an improper purpose. The bankruptcy court dealt with the parties to this proceeding throughout the reorganization before ultimately concluding that Mason & Dixon's post-confirmation actions were undertaken for the purpose of harassment and delay. The evidence contradicting Appellants' contentions that they had not objected earlier because they had not seen a copy of the participation agreement[4] also supports the bankruptcy court's finding. Therefore, imposition of sanctions does not constitute an abuse of discretion and that order is affirmed.

## II.  *Allowance of FNBB's Claims*

Appellants also contest the bankruptcy court's order allowing FNBB's claims in full and denying Mason & Dixon's objections. They assert that the court miscalculated the proper remaining principal balance and the corresponding amount of accrued interest, because it allowed FNBB to apportion Mason & Dixon's post-petition payments among principal, interest, and expenses, including attorney's fees, rather than allocating the entire amount to principal. Appellants also maintain that the bankruptcy court erred by allowing interest and expense claims without finding that the value of collateral exceeded the amount of the principal claim. The third contention is that the award of FNBB's attorney's fees was error because the court did not make a finding that they were "necessary" and because the fees were not reasonable, as required under 11 U.S.C. § 506(b).

Section 506(b) affects each of these issues. That section provides

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under

the agreement under which such claim arose.

### A.  *The amount of the claim*

■ At the hearing on Mason & Dixon's objections held March 4, 1987, John J. Bradley, III, an account officer for FNBB testified that a portion of Mason & Dixon's payments made to FNBB during reorganization were allocated to post-petition interest and expenses, particularly attorney's fees. This allocation was improper, and resulted in a higher balance on the pre-petition debt and correspondingly higher post-petition interest. 11 U.S.C. § 502(b) requires the bankruptcy court to determine the amount of the claim as of the filing of the bankruptcy petition. The bankruptcy court found that on March 29, 1984, Mason & Dixon owed FNBB $18,144,243.44, of which $18 million was principal and the remainder was accrued interest. Following the March 4, 1987, hearing, the bankruptcy court found a remaining total indebtedness of $1,621,011.87 including $1,260,218.39 in principal and $73,061.61 interest accrued through March 1987. Balance deficiency fees through 1986 totaled $168,350.77. The court also noted that FNBB expended a total of $516,836.92 on attorney's fees and expenses during the reorganization, all but $119,381.10 of which had been paid prior to March 4, 1987.

FNBB contends that its allocation of the payments was permissible, in accordance with Section 4.5 of the Credit Agreement. In Section 4.5 Mason & Dixon promised to pay all of FNBB's reasonable expenses relating to the agreement. However, the plain language of Section 506(b) places conditions on recovery of such post-petition expenses in bankruptcy. Specifically, the allowed secured claim may only be supplemented with expenses and attorney's fees if the underlying agreement provides for them, and post-petition interest[5] and expenses will be treated as secured only if they are reasonable and the value of the

---

4.  Rider number 2 to the credit agreement, dated April 1, 1980, includes recognition by the borrower that a copy of the participation agreement had been made available to it.

5.  The Fourth Circuit has ruled that the contractual requirement does not apply to post-petition interest. *Best Repair Co. v. United States,* 789 F.2d 1080 (4th Cir.1986).

collateral first exceeds the underlying allowed claim. 11 U.S.C. § 506(b), *see In re Colvin,* 57 B.R. 299, 301 (Bankr. D. Utah 1986); *In re Nordmann,* 56 B.R. 634, 636 (Bankr.D.S.D.1986).

The first condition mentioned above answers FNBB's contention. The inclusion of Section 4.5, and the coverage of the security agreements, merely means that the post-petition expenses can fall under Section 506(b) and be treated as secured, and does not make their status any less supplementary to the underlying claim. The requirement that a creditor be over-secured confirms that the underlying claim is the point of reference, and proceeds from sale of collateral should be used to pay the original allowed secured claim first. *See In re FCX, Inc.,* 54 B.R. 833, 842 (Bankr. E.D.N.C. 1985) (if after viewing evidence that pre-petition claim was fully secured the court later determines that it is not, court simply does not allow the post-petition interest and expenses). Thus, it was error to permit some of the interim payments to cover attorney's fees.

FNBB claims that if the value of the collateral is sufficient to cover the remaining principal and the other expenses then the order of payment will not have mattered. Although true with respect to the pre-petition claim and post-petition expenses, this overlooks the continued accrual of post-petition interest on the allowed secured claim. Had this claim been paid down more rapidly the amount of accrued interest would have been lessened. On remand the bankruptcy court should reconstruct the payments, applying them to the original $18,144,243.44, and reduce the amount of post-petition interest accordingly. If through liquidation the collateral returns at least the corrected amount of the pre-petition claim plus the amount already expended on post-petition expenses, a figure which should approximate $1,260,-218.39, the post-petition interest adjustment is all that will be required. However, if the collateral fails to return that amount FNBB will have recovered too much as a secured claim; any amount in excess of the value of collateral that had already gone toward paying attorney's fees would not

have been recoverable under Section 506(b) and should instead have been treated as either an administrative expense under 11 U.S.C. § 507(b) or an unsecured claim. This might require FNBB to return some amount previously received, in exchange for an inferior classification of its remaining claims.

### B. *The value of collateral*

█ Appellants also challenge the bankruptcy court's "assumption" that the value of the collateral exceeds the amount of the underlying claim. Some courts have placed an obligation on the creditor to prove he is over-secured. *See In re Colvin,* 57 B.R. at 301 (secured creditor recovers if can demonstrate that collateral exceeds claim); *In re Nordmann,* 56 B.R. at 636 (creditor must prove he is over-secured). In addition, generally earlier valuations of collateral, such as the bankruptcy court's findings in 1984 regarding adequate protection, are not binding on the parties in subsequent hearings, though they can be instructive. *In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1088–89 (4th Cir.1986). However, in the present case even if FNBB did not yet prove its status as over-secured, and even absent definite determination by the bankruptcy court, FNBB may still be entitled to treatment of its interest and expenses as secured. Section 506(b) states that a claim for such costs shall be allowed to the extent of the excess collateral. Section V.2. of Mason & Dixon's confirmed joint plan of reorganization requires prompt liquidation of whatever collateral is necessary in order to pay off FNBB, beginning with the rolling stock. The proceeds of such sale, after provision for administrative costs under 11 U.S.C. § 506(c), will either cover FNBB's claim, or they will not. If they do, then FNBB is entitled to have its claim for interest and expenses allowed. If they do not, FNBB will not recover those costs as secured claims, but will have to seek them as administrative expenses or unsecured claims.

Moreover, it is FNBB, not Mason & Dixon who may be harmed by the failure to evaluate the collateral by another method.

11 U.S.C. § 506(a) provides in pertinent part that the value of the collateral "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Under Section 506(a) the appropriate standard of valuation is ordinarily the amount that could be recovered from its sale under commercially reasonable conditions, which will usually fall somewhere between retail and distressed sale price. *In re Jones*, 5 B.R. 736, 740 (Bankr. E.D. Va.1980); *In re Damron*, 8 B.R. 323, 326 (Bankr. S.D. Ohio 1980). Therefore, the value evidenced by the liquidation may be less than what FNBB might have been entitled to prove as a matter of law. Under the circumstances in this case, including the facts that the value of collateral as stated at the adequate protection hearing so greatly exceeded the amount of the claim and that FNBB had a replacement lien on Mason & Dixon's post-petition accounts receivable, the court does not find it error for the bankruptcy court to have assumed that the creditor was over-secured pending liquidation.

C. *Reasonableness of fees*

■ Finally, Appellants claim that the bankruptcy court erred in allowing attorney's fees without finding that they were "necessary." Appellants cite for this proposition *In re United Merchants and Manufacturers, Inc.*, 674 F.2d 134, 140 (2d Cir. 1982); *In re Wonder Corporation of America*, 72 B.R. 580, 588–89 (Bankr.D. Conn.1987); and *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987). However, none of those cases require that the fees be found necessary; rather the bankruptcy court must determine that the creditor reasonably believed they were necessary. *In re Dalessio*, 74 B.R. at 723. Hence the standard, as suggested by the language of Section 506(b) is whether the fees and expenses were reasonable.

The reasonableness of attorney's fees should be determined by the bankruptcy court on a case-by-case basis. *In re Dye Master Realty*, 15 B.R. 932, 936 (Bankr.

W.D.N.C. 1981). In the present case the bankruptcy court expressly found that the fees and expenses were reasonable. The bankruptcy court has broad discretion in determining the amount of attorney's fees, *In re Fitzsimmons*, 51 B.R. 600 (9th Cir. BAP 1985), and the determination should be overturned only if it is an abuse of discretion or is based on a legal error. *See In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). This court is satisfied that the bankruptcy court took the requisite factors into account and that its findings on this issue are neither erroneous nor an abuse of discretion, and they are affirmed.

CONCLUSION

The court affirms the bankruptcy court's order of February 10, 1987, *in toto*. The March 26, 1987, order of the bankruptcy court allowing FNBB's claims is affirmed except that the court remands the matter to the bankruptcy court for calculation of the remaining balance on the pre-petition claim, and corresponding adjustment in the post-petition interest. If liquidation of all collateral generates less than the sum of the corrected amount of the underlying claim plus the amount already allocated to post-petition costs (which sum should be roughly equal to the bankruptcy court's first determination of the remaining principal balance) then the difference should be returned to Appellants from the amount held in escrow by FNBB, subject to FNBB's successful pursuit of the remaining claims as administrative expenses or unsecured claims. If FNBB no longer holds the amount in escrow, then the shortfall should be credited against FNBB's administrative or unsecured claims. This court does not now decide the propriety of treating all or part of any unsecured claim as an administrative expense under 11 U.S. C. § 507(b).

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.