883 F.2d 2
 The MASON & DIXON LINES, INC.; Central Transport, Inc.;
GLS Leasco, Inc., Plaintiffs-Appellants,
v.
The FIRST NATIONAL BANK OF BOSTON, Defendant-Appellee. (Two Cases)
The MASON & DIXON LINES, INC.; Central Transport, Inc.;
GLS Leasco, Inc., Plaintiffs-Appellees,
v.
The FIRST NATIONAL BANK OF BOSTON, Defendant-Appellant.
 Nos. 88-3109, 88-3110 and 88-3118.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1989.
Decided Aug. 16, 1989.
 
 Michael A. Nedelman (Patrick A. Moran, Scott A. Steinhoff, Simpson & Moran, Birmingham, Mich., on brief), for plaintiffs-appellants.
 Joseph Lieb Kociubes (John C. Solomon, Bingham, Dana & Gould, Boston, Mass., Rayford K. Adams, III, Tuggle, Duggins, Meschan & Elrod, P.A., Greensboro, N.C., on brief), for defendant-appellee.
 Before CHAPMAN and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 This case arose out of a proceeding in bankruptcy in which the debtor, Mason & Dixon Lines, sought to avoid a large portion of a $18,000,000 loan it had received or to have that portion of the loan declared unsecured. The district court, 86 B.R. 476, affirmed the bankruptcy court's rejection of Mason & Dixon's claim, and Mason & Dixon appeals to this court.
 
 
 2
 We affirm.
 
 I.
 
 3
 On May 6, 1971 Mason & Dixon and The First National Bank of Boston entered into a credit agreement. To secure the credit Mason & Dixon granted to FNBB a security interest in its vehicles. That security was later supplemented by the granting of an interest in Mason & Dixon's accounts receivable. Both security agreements were concluded with the bank in its own name.
 
 
 4
 The credit agreement contemplated the possibility that the bank would offer participation to other lenders. The agreement included a promise by Mason & Dixon to pay any such participant its full share and granted the participant the right to treat deposits or other property of Mason & Dixon which might be in the possession of the participant as additional collateral security.
 
 
 5
 On the same day on which the credit agreement was executed, First National Bank of Boston entered into a participation agreement with the Third National Bank of Nashville, Tennessee. The Third National Bank purchased a 50 percent interest in the loan, later adjusted to a 41.111 percent interest. The participation agreement granted to the Third National Bank a proportional interest in the security, as well as in the principal and interest payments. A rider to the credit agreement dated April 1, 1980 included an acknowledgment by Mason & Dixon that a copy of the participation agreement had been made available to it.
 
 
 6
 On March 29, 1984 Mason & Dixon filed for reorganization under Chapter 11 of the Bankruptcy Act. At that time the principal balance due under the loan agreement was approximately $18,000,000, and Mason & Dixon scheduled the entire outstanding balance as a secured claim of First National Bank of Boston. During the next two and one-half years Mason & Dixon paid approximately $17,000,000 to First National Bank of Boston for application to the principal and interest due on the indebtedness.
 
 
 7
 On October 9, 1986, however, Mason & Dixon filed supplementary objections to the claim of First National Bank of Boston and sought to recover approximately $6,000,000 on the ground that only $10,600,000 was owed to First National Bank of Boston. It took the position that the Third National Bank of Nashville was a separate creditor required to file its own claim.
 
 
 8
 On February 10, 1987 the bankruptcy court granted First National Bank of Boston's motions for summary judgment and sanctions.
 
 
 9
 On appeal to the district court the order of the bankruptcy court was affirmed in all respects relevant to Mason & Dixon's appeal. It did remand the case to the bankruptcy court for a recomputation of interest due, and First National Bank of Boston has appealed that portion of the order.
 
 II.
 
 10
 The essence of Mason & Dixon's claim is that the participation agreement made the Third National Bank of Nashville an independent creditor required to file its own separate claim in the bankruptcy proceedings, a step that, of course, it had not taken. Under the district court's interpretation of the statute the Third National Bank was not a separate creditor. That is the ruling Mason & Dixon contests on appeal.
 
 
 11
 We find it inappropriate to address that question, for its presentation by Mason & Dixon is foreclosed by principles of judicial estoppel. A litigant in bankruptcy proceedings may not take inconsistent positions when doing so would create highly inequitable results. United Virginia Bank v. B.F. Saul Real Estate, 641 F.2d 185, 190 (4th Cir.1981).
 
 
 12
 If Mason & Dixon's objection to the claim had been voiced in a timely fashion, the alleged defect in the claim was easily and readily correctable.
 
 
 13
 From the outset FNBB had acted as the exclusive manager of the loan. It alone disbursed funds to Mason & Dixon under the credit agreement, and all payments by Mason & Dixon were made to FNBB alone. This was true, of course, of all payments by Mason & Dixon after the filing of the petition in bankruptcy. Long before the filing of the petition Mason & Dixon had notice of the existence of the participation agreement, but, by its actions, it recognized that FNBB was acting as principal and as agent for Third National. After it filed its petition, it prepared a schedule of its debts and listed the entire amount of the loan as a secured debt due FNBB. There was no reference to Third National. Under these circumstances it was perfectly natural that the claim of the entire indebtedness was filed in the name of FNBB alone.
 
 
 14
 Had Mason & Dixon voiced any question about the interest and authority of FNBB, FNNB initially or by amendment could have made it explicit that in filing the claim it was acting both as principal and as agent for Third National. Or Third National could have joined in filing the claim or filed a separate claim on its own behalf for its portion of the loan.
 
 
 15
 Having dealt with FNBB as being in complete control of the entire amount of the loan, having listed the entire amount of the indebtedness as a secured claim of FNBB, and having sat idly by, without objection to the execution of the claim by FNBB alone, when any defect was readily correctable, Mason & Dixon is not now to be heard to voice any objection to the form of the claim that would have the potential effect of avoidance by Mason & Dixon of a portion of its indebtedness under the credit agreement or to relegate Third National's part of that secured claim to the status of an unsecured claim. The principles of judicial estoppel prevent the assertion of such a contention in an effort by Mason & Dixon to obtain a windfall of some $7,400,000 or create a substantial hindrance and delay in its collection. County Fuel Co., Inc. v. Equitable Bank Corp., 832 F.2d 290 (4th Cir.1987); Allen v. Zurich Ins. Co., 667 F.2d 1162 (4th Cir.1982).
 
 III.
 
 16
 When a lawyer signs a motion or a pleading, he certifies not only that there is legal foundation for it, but that it does not advance an improper purpose, such as harassment. F.R.Bankr.P. 9011(a).
 
 
 17
 We have set forth above the conclusion that the motivation of Mason & Dixon in filing these belated motions was so unconscionable that rules of judicial estoppel foreclose further assertion of the contention. In any event, the district court also found that Mason & Dixon had a purpose to harass, which warranted exercise by the trial judge of its discretion in awarding sanctions.
 
 
 18
 We find no abuse of that discretion.
 
 IV.
 
 19
 With regard to the cross appeal of FNBB, we affirm on the opinion of the district court.
 
 
 20
 AFFIRMED.