**In re STRATFORD LAMPS, INC., Debtor.**

**Bankruptcy No. 84–1056.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 19, 1990.

---

James A. Lewis, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., trustee.

P. Andrew Diamond, Lewis & Stockey, Pittsburgh, Pa., for debtor and objectors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Carl and Bella Schachter, principals of Debtor, have objected to the distribution of property proposed by the Chapter 7 trustee. They maintain that they are subrogated to the rights of First Seneca Bank, the Internal Revenue Service ("IRS"), and Pittsburgh National Bank ("PNB") because they, i.e., the Schachters, have paid debts owed by Debtor to these creditors.

For the reasons hereinafter advanced, the objection of the Schachters will be denied and the trustee will be ordered, unless stayed by Order of Court, to proceed with distribution, as modified by this Memorandum Opinion.

### I

### FACTS

Stratford Lamps, Inc. ("Debtor") filed a voluntary Chapter 11 petition on May 11, 1984. Only two assets were listed on the accompanying bankruptcy schedules: i.e., inventory worth $7,000.00 and a civil lawsuit of unknown value.

On September 25, 1985, the court determined that reorganization was unlikely, converted the case to a Chapter 7 proceeding, and appointed a Chapter 7 trustee.

The above-mentioned lawsuit was settled sometime in 1988, which settlement netted the bankruptcy estate $23,086.52. This sum, plus accrued interest, is available to provide a small distribution to creditors.

Debtor initially listed First Seneca as a secured creditor in the amount of $11,400.00. The Schachters had personally guaranteed payment of this debt to First Seneca. During the Chapter 7 proceeding, the Schachters, in their capacity as guarantors, paid $6,135.61 of the amount owed to First Seneca. Subsequent thereto, the trustee sold the above-mentioned inventory (in which First Seneca had a security interest) for $5,000.00. First Seneca accepted this amount from the trustee as satisfaction in full of the unpaid remainder of its claim.

The trustee has not proposed making any distribution to First Seneca because it has been paid in full. In addition, the trustee has subrogated the Schachters to the claim of First Seneca to the extent of their payment to First Seneca. However, the trustee has not listed them as secured creditors to the extent of their payment but as *un*secured creditors who are to receive only 9.08% of their payment to First Seneca—i.e., $557.13.

The Schachters maintain that they are entitled to be subrogated to the secured status of First Seneca to the extent of the $6,135.61 payment to First Seneca.

The trustee also has acknowledged a tax lien of the IRS and proposes to pay it in the amount of $3,324.98. The Schachters have paid $2,334.06 of this amount to the IRS, which leaves an unpaid debt of only $980.92.

The trustee does not propose subrogating the Schachters to the priority status of the IRS to the extent of their payment. The Schachters contend that they are entitled to be subrogated to the priority status of the IRS in the amount of the $2,334.06 payment.

PNB filed a claim against debtor as an *un*secured creditor in the amount of $22,-500.00. The debt arose out of a loan to debtor, payment of which was guaranteed by the Schachters.

The trustee has proposed making distribution to PNB as an unsecured creditor in the amount of $2,043.00—i.e., 9.08% of the amount due and owing to PNB. The Schachters maintain that they have made payment in full to PNB in their capacity as guarantors and claim that they are entitled to be subrogated to the unsecured claim of PNB.

## II

## ANALYSIS

Subrogation is the substitution of one party in place of another with reference to a lawful claim or right, so that the one who is substituted succeeds to the position of the other in relation to the other's claim or right. *See Sumitomo Corp. of America v.*

*M/V Saint Venture,* 683 F.Supp. 1361, 1368 (M.D.Fla.1988).

■ Each of the following elements must be satisfied in order for a co-debtor to be subrogated to the rights of a creditor:

(1) payment must have been made by the subrogee to protect his own interest;

(2) the subrogee must not have acted as a volunteer;

(3) the debt must be one for which the subrogee was not primarily liable;

(4) the entire debt must have been paid;

(5) subrogation must not work any injustice to the rights of others.

*See In re Kaiser Steel Corp.,* 89 B.R. 150, 152 (Bankr.D.Colo.1988) (citations omitted).

A) *First Seneca Bank*

■ The Schachters' request that they be subrogated to the secured status of First Seneca to the extent of their $6,135.61 payment to it must be denied. First Seneca was secured in a variety of ways, one of which was a security interest in the inventory sold by the trustee for the sum of $5,000.00. Neither debtor nor First Seneca has offered credible proof of such quantity or quality indicating a security interest in this lawsuit or the proceeds thereof. If the Schachters are to be subrogated at all to the rights of First Seneca, they in effect "stand in its shoes" and may not enjoy rights greater than those enjoyed by First Seneca. *See In re Denby Stores, Inc.,* 86 B.R. 768, 775 (Bankr.S.D.N.Y.1988). Consequently, the Schachters could be subrogated *only* to the rights of First Seneca as an *un*secured creditor, *not* to its rights as a secured creditor.

More importantly, however, the Schachters are not entitled to be subrogated even to the rights of First Seneca as a general unsecured creditor. Elements (1), (2), and (3) required for subrogation to apply in this instance have been satisfied. The Schachters were neither primarily liable nor acting as volunteers when they paid First Seneca $6,135.61 as guarantors. In so doing, they were protecting their own interest.

Element (4), however, has not been satisfied as First Seneca was not paid in full by the Schachters. Approximately $5,400.00 of the debt owed to First Seneca remained after the Schachters had made payment in the amount of $6,135.61. The right of subrogation does not arise unless the primary creditor has been paid in full. *See In re Watkins Oil Service, Inc.*, 100 B.R. 7, 11 (Bankr.D.Ariz.1989). First Seneca was not paid in full until the trustee sold the inventory in which First Seneca was secured for $5,000.00, which amount First Seneca accepted as satisfaction in full of its claim.

There is yet another, more compelling reason why the Schachters should not be subrogated to First Seneca. To subrogate the Schachters, given the circumstances of this case, would result in injustice and harm the rights of other creditors. In short, element (5) would not be met.

Subrogation is not a matter of strict right but instead is equitable in nature. It depends on the peculiar facts and circumstances of each case. *See In re Co–Build Companies, Inc.*, 21 B.R. 635, 636 (Bankr. E.D.Pa.1982). Subrogation will not be applied where it would be inequitable to do so, where it would work injustice to others having equal equities, or where it would operate to defeat the lawful rights of another. *Id.* In order for subrogation to apply, the equities of the party seeking to be subrogated must be superior to those of other claimants. *See Mellon Bank, N.A. v. Barclays American/Business Credit, Inc.*, 527 F.Supp. 251, 255 (W.D.Pa.1981).

Carl Schachter was President of Debtor and, as such, was an insider. *See* 11 U.S.C. § 101(30)(B)(ii). Bella Schachter, the wife of Carl Schachter, also was an insider. *See* 11 U.S.C. § 101(30)(B)(vi).

One of the primary objectives of bankruptcy is to provide a fair and organized distribution to creditors of the assets of the bankruptcy estate. *See In re Dan–Ver Enterprises, Inc.*, 86 B.R. 443, 448–49 (Bankr.W.D.Pa.1988). Were this court to allow the Schachters to be subrogated to the right of First Seneca, an unsecured creditor, other unsecured creditors would receive substantially less by way of distribution. It would be inequitable and not consonant with the underlying objective of bankruptcy law to permit insiders, such as the Schachters, to receive distribution at the expense of unsecured creditors when the debts owed to the unsecured creditors were incurred as a result of actions by those very insiders.

The Schachters already are scheduled to receive distribution according to the proposal of the trustee. Carl Schachter, for example, is scheduled to receive a priority payment of $2,000.00 for pre-petition wages under 11 U.S.C. § 507(a)(3). Mariel Schachter, who apparently is related to Carl and Bella Schachter, is also scheduled to receive a distribution as an unsecured creditor. These distributions will diminish the amount of estate property available for distribution to other unsecured creditors. A further dimunition would be inequitable.

B) *Internal Revenue Service*

The trustee proposes to pay the sum of $3,324.88 to the IRS. The contention of the Schachters that they should be subrogated to the priority status of the IRS, as the result of their payment to the IRS in the amount of $2,344.06, is without merit.

In general, one who pays the IRS on behalf of another, because they are a codebtor, does not thereby become subrogated to the priority claim of the IRS. *See In re Watkins Oil Service, Inc.*, 100 B.R. 7, 11 (Bankr.D.Ariz.1989); *also Creditors' Committee v. Mass. Dept. of Revenue*, 105 B.R. 145, 149 (D.Mass.1989).

Also, element (4) required for subrogation has not been met. The Schachters did not pay the entire amount of the debt owed by Debtor to the IRS. Only $2,344.06 of the $3,324.88 owed was paid by them.[1]

Because the Schachters have paid the IRS the sum of $2,344.06 on its claim,

---

1. The Schachters appear to have conceded in their posthearing brief their claim to the priority status of the IRS through subrogation. In so conceding, the Schachters in effect have abandoned their objection to this portion of the trustee's proposed distribution.

 

distribution to the IRS will be reduced to $980.92 ($3,324.98 − $2,334.06 = $980.92). The remaining $2,334.06 shall be added to the amount available for distribution to unsecured creditors.

### C) *Pittsburgh National Bank*

The contention of the Schachters that they are entitled to be subrogated to the unsecured claim of PNB, and thus are entitled to receive the full amount of the proposed distribution to PNB, also is without merit.

Elements (4) and (5) required for subrogation have not been met with respect to this claim.

No evidence was presented *at the hearing* that *the Schachters* had paid in full the debt owed to PNB by the debtor. Moreover, the proof of claim submitted by the Schachters, which claims that they had paid $10,562.27 of said debt to PNB, indicates otherwise. The total amount of the debt due and owing to PNB was $22,500.00.

The only indication that the debt owed to PNB had been paid in full is found in a letter dated subsequent to the hearing and attached to the Schachters' post-hearing brief. The letter, which is dated September 28, 1990 and is from counsel for PNB to counsel for the Schachters, states that the debt owed to PNB by debtor has been paid in full. The letter does *not* state, however, that the debt was paid *by the Schachters*. Rather, it states that it is *unknown* who paid the debt.[2]

Element (5) required for subrogation also has not been met in this instance. Even assuming that it was the Schachters who paid in full the debt owed to PNB, it would be inequitable in light of the circumstances of this case to subrogate them to the claim of PNB for the same reason that it would be inequitable to subrogate the Schachters to the rights of First Seneca as unsecured creditor.

To permit the Schachters, who qualify as insiders of the Debtor, to be subrogated to the rights of PNB when they also have been scheduled to receive distribution elsewhere would be grossly inequitable in that such additional distribution would be at the expense of those who are not insiders and would diminish the amount of their recovery even further. Such a result would be repugnant to the underlying philosophy of the Bankruptcy Code and therefore must not be allowed.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 19th day of October, 1990, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the objections to proposed distribution of property by Carl Schachter and Bella Schachter are denied,

It is further ORDERED that the trustee make distribution, unless stayed by Order of Court.

---

**2.** Because this debt to PNB has been paid in full by someone (whose identity is unknown), the distribution proposed by the trustee will be amended to exclude this payment. The amount which the trustee proposed to distribute to PNB ($2,043.00) will be distributed instead among the remaining unsecured creditors.