### In re FELICITY ASSOCIATES, INC., Debtor.

### Bankruptcy No. 95–11101.

United States Bankruptcy Court, D. Rhode Island.

June 3, 1996.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Debtor.

Robert D. Wieck, Richard L. Gemma, MacAdams & Wieck Incorporated, Providence, RI, for Citizens Trust Company.

Sheryl Serreze, Office of the U.S. Trustee, Providence, RI.

Diane Finkle, Winograd, Shine & Zacks, P.C., Providence, RI, for Marie Porcaro.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on April 4, 1996, on the Objection of Citizens Trust Company to the Debtor's Disclosure Statement and Plan of Reorganization. At issue is the effect of a "Participation Agreement," so-called, between Citizens and Marie Porcaro ("Porcaro"), vis-a-vis the Debtor's classification of Porcaro as the holder of a secured claim in this case. The Plan treats Porcaro as a secured creditor, based on her subordinated participation interest in a loan between Citizens and the Debtor, and places her in a private "sub-class" under the Plan. Porcaro is also a guarantor of the loan, together with her sons Patrick and Vincent Porcaro, the Debtor's principals.

### BACKGROUND

On the date of filing of this Chapter 11 case (May 8, 1995), Felicity owed Citizens

$500,000 on a secured line of credit.[1] By December 1995, the debt had been reduced to $286,000 through an orderly liquidation of old inventory. The Debtor's performance during the Chapter 11 case apparently was not good enough, however, and Citizen's brought actions in the state court against Marie Porcaro and her two sons, on their guarantees. After being sued as a guarantor, Marie Porcaro entered into an "Option Agreement to Purchase Participation Share" with Citizens, whereby she paid $200,000, and Citizens agreed to assign all of its right, title and interest in the loan to Porcaro, once the loan was paid down to $200,000. The Agreement also provides *inter alia* that:

> (iii) [Citizens] shall have the *sole and absolute right* to *manage, perform* and *enforce* the terms of the Agreement, and *to exercise* and enforce *all* provisions, *rights* and remedies exercisable or enforceable by Bank *in connection with* the *Debtor's bankruptcy proceeding* in *Bank's sole and absolute discretion....*

*See* Citizens' Ex. 1, at 3 (emphasis added).

Citizens objects to approval of the Disclosure Statement on the following grounds:

(1) That the Debtor has attempted, improperly: (i) to rewrite the Agreement between the Bank and Marie Porcaro, by treating her as a secured creditor; (ii) to place Porcaro in a separate secured creditor subclass, in order to gerrymander an affirmative vote on the Debtor's Plan; and (iii) "to pay the Bank a sum of money on the outstanding balance of the loan which is less than ... required under the Code." Citizens also complains that the Disclosure Statement fails to adequately describe the Debtor's financial performance for the years ending December 31, 1994, and 1995, as well as other information relevant to the merits of the proposed Plan.

The Debtor argues that the agreement between Marie Porcaro and Citizens is not really a "participation agreement," but rather, that the effect of the document is to make Marie Porcaro a subordinated, contingent, secured creditor in the amount of $200,000.

For the reasons discussed below, we reject all of the Debtor's arguments, and deny approval of the present Disclosure Statement.

## DISCUSSION

 It has become standard Chapter 11 practice that "when an objection raises substantive plan issues that are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face." *In re Main Road Properties,* 144 B.R. 217, 219 (Bankr.D.R.I.1992) (citing *In re Bjolmes Realty Trust,* 134 B.R. 1000, 1002 (Bankr. D.Mass.1991)). For a reorganization plan to be confirmed, "it must comply with all the requirements of Chapter 11, as provided in 11 U.S.C. § 1129(a)(1)." *See In re Smithfield Estates, Inc.,* 52 B.R. 220, 222 (Bankr. D.R.I.1985). While the question presently before the Court appears to be a confirmation issue, it is one that we feel comfortable addressing at the disclosure hearing.

 The Debtor and Citizens agree that in a true participation agreement the lead bank is charged with monitoring and collecting the debt, including the filing of a proof of claim in bankruptcy, and perfecting the claim against the borrower. *See Mason & Dixon Lines, Inc. v. First Nat'l Bank,* 86 B.R. 476, 479 (D.N.C.1988), *aff'd* 883 F.2d 2 (4th Cir. 1989); *First State Bank v. Towboat Chippewa,* 402 F.Supp. 27, 34–35 (N.D.Ill.1975). It is also agreed that because the participant's relationship is with the bank and not with the debtor, the lead bank, *and not the participant* is considered the creditor. (Emphasis added.) *See Hibernia Nat'l Bank v. Federal Deposit Ins. Corp.,* 733 F.2d 1403, 1407 (10th Cir.1984); *Depositors Trust Co. v. Frati Enter. Inc.,* 590 F.2d 377, 379 (1st Cir.1979). However, the Debtor and Citizens part company as to the nature of this agreement between the Bank and Marie Porcaro.

The Court in *Mason Dixon* listed two standard earmarks of a participation agreement: (1) that the lead bank retain the col-

---

**1.** Marie Porcaro is the majority shareholder of the Debtor corporation, with 60.25% of the stock. Her sons, Vincent Porcaro and Patrick Porcaro, own 19.87% and 19.88% of the stock, respectively. Together, they own all of the stock.

lateral, in its name; and (2) that the lead bank service the loan. 86 B.R. at 478. The subject agreement, in paragraph "iii" quoted *supra*, contains these two requirements. In addition, it appears that the definition of a participation agreement is quite fluid. One commentator has stated that the participation agreement has "no specified or standard form, no statutory characteristics, and often operates in conjunction with other documents...." Alan W. Armstrong, *The Evolving Law of Participations*, R175 ALI–ABA 255 (April 2, 1992).

Based upon the entire record, we conclude: (1) that this is a true participation agreement to which Marie Porcaro is a party; and (2) that she is not a secured creditor in this case, as the Debtor proposes to treat her under the Plan. The request for approval of the Disclosure Statement, as proposed, is DENIED, and the Debtor is allowed fifteen (15) days within which to file an Amended Plan and Disclosure Statement.

■ The Debtor argues, alternatively (and quite hypothetically), that *if* Marie Porcaro had paid $200,000 under her guarantee, she would be "*automatically entitled*" to be subrogated to the rights of Citizens to the extent of her payment, and that, because of this "what if" scenario, the participation agreement only mirrors her rights under § 509 of the Code. This argument is patently defective because Ms. Porcaro has *not* met her obligation as a guarantor, nor has she offered to do so. In addition, we find without any hesitation that Marie Porcaro's entitlement to equitable consideration and subrogation, on the facts of this case, is not a viable option. *See In re Stratford Lamps, Inc.*, 120 B.R. 31, 34 (Bankr.W.D.Pa.1990) (holding that "[i]n order for subrogation to apply, the equities of the party seeking subrogation must be superior to those of other claimants"). In this insider case,[2] the equities do not even begin to favor either the Debtor or Marie Porcaro.

2. It would be hard to imagine a clearer insider situation, where the principal shareholder and her two sons own all of the stock of the corporation, and where, under the present Plan, Marie

Enter Judgment consistent with this order.

Porcaro would become an impaired secured creditor, with the voting power to effectuate a cramdown over the objection of Citizens Trust Company.